[Civ. No. 63467. Second Dist., Div. Five. Oct. 19, 1982.]

JOSEPH V. MASIN et al., Plaintiffs and Appellants, v.
JOSEPH W. LA MARCHE et al., Defendants and Appellants.

COUNSEL

Ernest A. Panizzon for Plaintiffs and Appellants.

Gary R. Ricks, William W. Watts, Price, Postel & Parma, Ronald W. Cook and Cook & Berryhill for Defendants and Appellants.

OPINION

**FEINERMAN, P. J.**—Plaintiffs Joseph and Eva Masin, the owners of 34 acres of land in Montecito, California (hereinafter called the Masins), appeal from a judgment in favor of defendants after a court trial on plaintiffs' complaint to enjoin interference with an appurtenant access and utility easement claimed to burden defendants' land. The trial court held that plaintiffs' access easement had been terminated or extinguished by abandonment and adverse possession. However, the trial court also held that the public utility portion of the easement had not been extinguished.

Plaintiffs claim that the evidence was insufficient to uphold the findings of abandonment and termination through adverse possession. Defendants Roy A. and Estelle B. Lassen and Joseph W. and Patricia E. La Marche cross-appeal, contending that the trial court improperly interpreted an agreement recorded at the time of the conveyances to defendants.

*Facts*

Donn Thomas was the original owner and common grantor of plaintiffs' 34-acre property (the Masin property) and the four 1-acre parcels owned by defendants.[1]

---

[1]Attached hereto is defendants' exhibit A, a map of defendants' four parcels of property with the disputed easement outlined. Plaintiffs' 34 acres are to the south of defendants' property.

In May 1971 Donn and Doris Thomas conveyed parcel C (see exhibit A) to defendants La Marche. Shortly thereafter, the Thomases conveyed parcels B and D to defendants Lassen. In each of the grant deeds as to parcels B, C, and D, Thomas expressly reserved "A non-exclusive easement for ingress and egress, shown as '25´ access and public utility easement' recorded in Parcel Map Book 7, page 57 in the office of the County Recorder of said county."[2]

Subsequently, defendants Lassen conveyed parcel D to defendant Bernard B. Berk and defendant Lassen purchased parcel A from Thomas. The Masin property to the south of defendants' property passed "[t]hrough various intervening conveyances, none of which described or mentioned the easement reserved by DONN THOMAS in the Deeds by THOMAS to Defendants . . ." until plaintiffs acquired title thereto in December 1978.

In 1971, at the time of the conveyance of parcels B, C and D to defendants Lassen and La Marche, an agreement was entered into by Thomas, Lassen and La Marche entitled "Agreement of record" and that agreement was recorded on the same day and just prior to the deeds from Thomas to defendants La Marche and Lassen.[3]

---

[2]Donn Thomas was deceased at the time of trial.

[3]The agreement provides in part: ". . . [¶] Existing common roads and driveway serve all parcels, and, whereas, an additional principal entrance and driveway has been indicated and accepted legally in above mentioned lot-split, and; because of the common responsibilities and benefits inherent in the conditions of ownership, and use, all buyers of above referred parcels do hereby agree:

"#1 Road easement

"An easement for access and egress is hereby given to all of the present and future owners of the parcels [Thomas, Lassen, and La Marche] . . . along the eastern-boundary of Parcel B through to the southern boundary of C and D. . . .

"#2 Road development

"To assume an equal one-fourth share of the cost of development of an appropriate entry on the indicated easement . . . on or before May 1, 1975. . . .

". . . . . . . . . . . . . . . . . . . . . .

"#6 General conditions

"These above noted conditions shall become part of the deed restrictions and conditions recorded, . . . .

". . . . . . . . . . . . . . . . . . . . .

"#8 Temporary agreement

"An easement is hereby given to a residence directly south of the four parcels . . . on a temporary basis for not longer than one year after May 15, 1971. This temporary easement is to permit access and egress and continuation of use of existing utilities now passing through or over parcels A, B, C, and D.

"#9 Termination of Temporary Agreement

"Exactly upon change of recorded ownership of above mentioned residence or May 15, 1972, whichever occurs first, the above mentioned access and privileges terminate, unless agreeable (acceptable) arrangements are made by the new recorded owners and the four recorded owners of the four above referred parcels, A, B, C, and D.

". . . . . . . . . . . . . . . . . . . . .

At the time of the conveyances to Lassen and to La Marche in 1971, Thomas had a tenant named Goodson living in a caretaker's cottage located on the Masin property just to the south of parcels C and D. (See exhibit A.) Thomas, himself, still owned parcel A.[4] At the time of the conveyances there was an existing paved driveway between parcels A and B which extended along the border between C and D past the southerly border of defendants' four parcels and continued about 50 to 100 feet past the caretaker's cottage on the Masin property.

There was no paved road along the first part of the easement reserved by Thomas in the grant deeds to Lassen and La Marche. One of the purposes of the agreement of record was to move the access road over to the easterly border of parcel B. The easement in question in this case was paved in 1975.

Defendant, La Marche, testified that up to 1975 he used the existing driveway between parcels A and B to get to his property. Thomas' tenant, Mr. Goodson, used the same access route to get to the caretaker's cottage on the Masin property for a period of one year until May 15, 1972. After that time, until 1979, no one else used that access route to get to the Masin property.

The trial court based its finding of termination of the appurtenant easement by adverse possession on the following evidence.

La Marche testified that on or about May 15, 1972, he stretched a "very heavy rope" attached to two posts across the south portion of the road where it entered onto the Masin property. He also hung up a paper sign forbidding use of the roadway. The sign disappeared after a week. Thereafter, La Marche put a four-by-four timber in the middle of the road and attached two-by-fours on either side to form a barrier. The barrier remained until 1973. In 1973 La Marche stored the "side walls" of a dismantled cabin on the roadway where they remained until 1979 when plaintiff requested that he move them.

La Marche testified, "All through this period of time, I used this as a storage area." He stored a small green utility trailer on the road and "all

---

"#12 Access to owners of parcels A, B, C, and D is guaranteed on existing driveways until completion of a paved entry or easement as indicated on the easterly side of Parcel B. Upon completion of this paved entry the present entry shall no longer be a common easement, but shall be common only to parcels A and B, to be maintained, used, altered or closed at any point according to mutual agreement between the respective owners of parcels A and B."

[4]Parcel A was sold to Lassen in 1972.

kinds of timbers and building materials and things of that nature [were] stored on this road constantly."

From 1975 through 1977 La Marche stored a 20-foot trailer on the road.[5] Also shrubbery was allowed to grow so as to prevent ready vehicular access. There was evidence of little or no use of the easement by anyone who lived on the Masin property from 1972 to 1979.[6]

The trial court based its finding of abandonment on the following evidence. Mr. Goodson was Thomas' tenant and lived in the caretaker's cottage at the time of the conveyances to defendants La Marche and Lassen. Mr. Goodson had access to the caretaker's cottage off Ashley Road over the driveway between parcels A and B and C and D and he continued using that access road after the conveyances were made. However, he testified that in early March 1972 Thomas told him that he would have to move within 30 days "because he couldn't guarantee that he could get utilities to me beyond that."[7] Before the 30 days were up Goodson asked Thomas for an extension of time. Goodson testified "He said he would let me have that extension of time, but after that, he didn't think I could even have access to the road, because it was going to be closed." Shortly thereafter Goodson moved.

Defendant Berk testified that shortly after he purchased parcel D he had a conversation with Thomas about buying the caretaker's cottage and the adjoining two acres. Berk testified that Thomas told him "that he would give me the property at a very favorable price, which was less than I had paid for my property, because I was the only one that had access to it; he described it as land-locked."

In addition, the trial court based its finding of abandonment on "4) the failure of DONN THOMAS and all successors-in-interest to refer to or describe the easement of record in their subsequent deeds of the THOMAS property [the 34 acres referred to herein as the Masin property]; 5) nonuse of the easement from May, 1972 until July, 1979 at which time Plaintiffs' agents cleared the easement of materials and shrubbery blocking it; and 6) lack of contribution by THOMAS and his successors to any costs of maintenance and repair of the access roadway."

---

[5]La Marche, himself, did not actually move onto parcel C until the summer of 1977.

[6]The Masin property was accessible from other public roads. The trial court found that "[t]he shortest and most logical manner of access to the . . . [caretaker's] cottage is via the easement asserted by Plaintiffs although alternate, but less convenient, means of access are available over Plaintiffs' own property."

[7]There was testimony to the effect that the utilities for the caretaker's cottage actually came from those that serviced parcel B.

## I.

■ An easement obtained by grant cannot be lost by mere nonuse. (*City of Vallejo* v. *Scally* (1923) 192 Cal. 175, 177 [219 P. 63]; *Tarr* v. *Watkins* (1960) 180 Cal.App.2d 362, 364 [4 Cal.Rptr. 293].) However, it may be lost by prescription or adverse possession, and in such a case, nonuse may be considered as a factor in accomplishing the extinguishment by adverse possession. (*Glatts* v. *Henson* (1948) 31 Cal.2d 368, 371 [188 P.2d 745].) "It is well settled that an easement, regardless of whether it was created by grant or use, may be extinguished by the owner of the servient tenement upon which the easement is a burden, by adverse possession thereof by the servient tenement owner for the required statutory period. Perhaps more accurately stated an easement may be extinguished by the user of the servient tenement in a manner adverse to the exercise of the easement, for the period required to give title to land by adverse possession. [Citations.]" (*Id.,* at pp. 370-371; Rest. Property, § 506.)

■ Notice of the servient tenement owner's adverse claim may be either actual or constructive; may arise out of the nature of his use; and need not be orally communicated to the owner of the dominant tenement. Furthermore, the question whether the various elements of adverse possession have been established constitute questions of fact. (*O'Banion* v. *Borba* (1948) 32 Cal.2d 145, 149-150 [195 P.2d 10]; *Popovich* v. *O'Neal* (1963) 219 Cal.App.2d 553, 556 [33 Cal.Rptr. 317].)

■ Plaintiffs contend that defendants' use of the easement for storage purposes was not sufficiently continuous, hostile and adverse to the various owners of the easement because "The nature of the obstructions, cars, wood, trailers, trash, overgrown hedges, was always changing, moveable, temporary or subject to pruning . . . [and] because the roadway surface was never impaired and with a day's clean up became passable by vehicles."

In *Ross* v. *Lawrence* (1963) 219 Cal.App.2d 229 [33 Cal.Rptr. 135], the court upheld a trial court determination that an easement for ingress and egress had been extinguished by adverse possession where the evidence showed that the owners of the servient tenement had used the easement for parking purposes for a period in excess of five years. The cars, of course, were continuously being moved on and off the easement. The court stated at page 234: "The continuity of use essential to the creation of an adverse claim need not be constant [citations]; will suffice for this purpose if it is a use wholly inconsistent with the use of the servient tenement for easement purposes; and is sufficiently proven by evidence which establishes a use of

the latter tenement in a manner and during times which render the easement across such of no practical worth to the owner of the dominant tenement. In this case, the use by the defendants and their predecessors in interest of the 15-foot easement strip for parking purposes at any time they chose was wholly inconsistent with the right of the plaintiffs and their predecessors to use it at will for entry upon their property and, consequently, was adverse to the latter right."

In the case before us, defendant La Marche erected a wooden barrier across the easement at his property line where it abutted the Masin property in 1972 and he testified that throughout the period of time until 1979 he used the part of the easement leading on to his property from the Masin property as a storage area in which he stored items as large as the walls of a cabin and a 20-foot trailer. The purpose of the easement was ingress and egress. Defendants' use of the easement for storage established a use of the servient tenement in a manner which rendered the easement of "no practical worth" to the owners of the Masin property. This conclusion is fortified by the evidence which showed that the owners of the dominant tenement did not in fact use the easement for purposes of ingress and egress during the statutory time period.

Plaintiffs emphasize the fact that the 20-foot trailer was only stored on the easement from 1975 through 1977 and contend that defendants' use was not continuous. La Marche actually testified that he used the easement for storage "constantly" from 1972 to 1979. Furthermore, in *Zimmer* v. *Dykestra* (1974) 39 Cal.App.3d 422, at page 432 [114 Cal.Rptr. 380], the applicable law is stated as follows: "'A use may be *continuous* [italics added] though there are periods of time more or less extended between the specific acts of use. Many easements, such as rights of way and rights of hunting or fishing, which are periodical or only occasional in use may be acquired by prescription. The requirement means that there be no break in the essential attitude of mind required for adverse use rather than that the use be constant.' [Citation.]

"'. . . . . . . . . . . . . . . . . . . . .

"'An *interruption* [italics added] of an adverse use results only from an act of one against whom the use is adverse. The act may consist in either, (1) bringing and pursuing to judgment legal proceedings in which the use is determined to be without legal justification, or (2) producing a cessation of the use without the aid of legal proceedings.' [Citation.]"

In the case at bench the use was clearly continuous and adverse. Neither plaintiffs nor their predecessors in interest took any action to stop La

Marche's use of the access portion of the easement as a storage site until 1979. The evidence was sufficient to sustain the trial court's finding that the access easement across defendants' property was extinguished by adverse possession.

In light of our conclusion just stated, we need not consider whether the evidence was also sufficient to support the trial court's finding that plaintiffs and/or their predecessors in interest intentionally abandoned the easement.

■ We turn then to a consideration of the issues raised by defendants on their cross-appeal.

With respect to the agreement of record, which is set out in part in footnote 3, *ante,* the trial court concluded as follows: "The Agreement of Record . . . is too ambiguous when compared to the clear language of the Deeds themselves to itself cause the termination of the easement reserved in the Deeds since it is not clear that the temporary easement referred to in the Agreement was the same easement referred to in the Deeds."

Cross-appellants, defendants, argue that the trial court erred in its interpretation of the agreement of record and contend that under *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861 [44 Cal.Rptr. 767, 402 P.2d 839], this court should determine that the agreement terminated the access and utility easement as of May 15, 1972.

We decline to do so and affirm the trial court's interpretation. The agreement was prepared contemporaneously with the sale of parcels B, C and D to defendants Lassen and La Marche. The agreement was recorded on the same day and immediately prior to the deeds from Thomas to defendants La Marche and Lassen in June, 1971. It must be interpreted in light of these circumstances. The agreement refers to two easements: the temporary easement on the existing driveway between parcels A and B and the new 25-foot wide access and utility easement along a driveway to be constructed along the easterly boundary of parcel B, through the common border of B and D, joining up with the old existing driveway at the common corner of parcels B, C and D, and continuing on the common border of C and D. It seems clear that paragraphs 8 and 9, entitled temporary agreement and termination of temporary agreement, refer to use of the then existing driveway located between parcels A and B and not the new access easement to be constructed on the easterly side of parcel B. Paragraph 12 of the agreement, read in connection with the grant deed provisions creating the easement for access and utilities along the easterly boundary of parcel B, does not lend itself to an interpretation that the easement was to be extinguished on May 15, 1972.

The judgment is affirmed.

Ashby, J., and Hastings, J., concurred.

A petition for a rehearing was denied November 17, 1982, and the petition of plaintiffs and appellants for a hearing by the Supreme Court was denied December 14, 1982.