[No. A047029. First Dist., Div. Five. Aug. 13, 1990.]

RONALD B. SEVIER et al., Plaintiffs and Appellants, v. LAWRENCE M. LOCHER et al., Defendants and Respondents.

**COUNSEL**

Gordon, DeFraga, Watrous & Pezzaglia and Peter D. Langley for Plaintiffs and Appellants.

Sheldon & Mankin, Robert E. Sheldon and Kay E. Tindel for Defendants and Respondents.

**OPINION**

**KING, J.**—In this case we hold that a transfer of title to real property after the prescriptive period for adverse possession of the property has begun does not interrupt or terminate the running of the prescription period. Adverse possession refers to occupation or use of land adverse to legal title, not to a particular holder of legal title.

On June 21, 1988, Ronald and Nancy Sevier filed a complaint to quiet title in which they alleged that on November 4, 1986, they acquired by grant deed a parcel of real property and an easement over a strip of land running along the edge of that property to the street. The land belonged to Lawrence and Constance Locher who used it as a driveway to their property directly behind the Seviers'. The Lochers cross-complained to quiet title and extinguish the easement by adverse possession.

The trial court found the Seviers' roadway right-of-way was extinguished by adverse possession but their utility easement over the property survived.

I

██ An easement obtained by grant may be extinguished by adverse possession by the owner of the servient tenement. (*Masin* v. *La Marche*

(1982) 136 Cal.App.3d 687, 693 [186 Cal.Rptr. 619].) "The elements necessary to establish title by adverse possession are tax payment and open and notorious use or possession that is continuous and uninterrupted, hostile to the true owner and under a claim of title," for five years. (*Gilardi* v. *Hallam* (1981) 30 Cal.3d 317, 321 [178 Cal.Rptr. 624, 636 P.2d 588], citations omitted.) The five-year prescriptive period begins to run when a cause of action accrues, that is, when the owner is deprived of possession. (*Sorensen* v. *Costa* (1948) 32 Cal.2d 453, 460 [196 P.2d 900].)

 The Seviers' primary contention is that the Lochers did not occupy the easement adversely to *them* for the required period since they had not owned the property for five years. The trial court found "the five year prescriptive period does not commence again upon the sale to plaintiff of the subject property," citing *Le Roy* v. *Rogers* (1866) 30 Cal. 229 and *Masin* v. *La Marche, supra,* 136 Cal.App.3d 687.

In *Le Roy,* the prescriptive period had already run before a mortgage was executed and foreclosed, and the premises sold by the sheriff, conveyed to the assignee of the mortagee and thence to the plaintiff. (*Le Roy* v. *Rogers, supra,* 30 Cal. at p. 232.) Affirming the trial court's finding of adverse possession against the plaintiff, the court explained, "It will not be contended that a right of action accrues successively to each of the several purchasers of the same parcel of land, in the sense in which that term is used in statutes of limitation, as against the person in adverse possession, at the time of the first purchase. Were it so, it would be in the power of any one to avoid the statute by simply conveying the land during the running or after the expiration of the five years." (*Id.* at p. 235.)

The Seviers maintain that *Le Roy* is inapplicable to them because they acquired an "independent title" rather than stepping into the shoes of one whose title was already subject to a claim of adverse possession. On the contrary, like the plaintiff in *Le Roy* who took the mortgagor's estate as if it had been directly conveyed (30 Cal. at p. 236), the Seviers acquired their grantors' title against which the prescriptive period was already running. That title did not, in the words of the *Le Roy* court, "then first spr[i]ng into being," nor was it "derived from a title then existing, but that did not confer the right of entry." (*Id.* at p. 235.)[1]

The issue in *Masin* was whether adverse possession was continuous from 1972 or began in 1975. The court quoted from *Zimmer* v. *Dykstra* (1974) 39

---

[1] For example, "Where one, possessing only those rights in the land that grow out of prior possession, is ousted, after the expiration of five years, he is barred of his recovery; and if he thereafter acquires the title from the general Government, it may properly be said that he then acquires an independent title . . . . And the remainder man, upon the expiration of the particular estate, does not come in under it, but claims through an independent source of title . . . ." (*Le Roy* v. *Rogers, supra,* 30 Cal. at pp. 235-236.)

Cal.App.3d 422, 432 [114 Cal.Rptr. 380]: " ' "An *interruption* of an adverse use results only from an act of one against whom the use is adverse. The act may consist in either, (1) bringing and pursuing to judgment legal proceedings in which the use is determined to be without legal justification, or (2) producing a cessation of the use without the aid of legal proceedings." [Citation.]' " (*Masin* v. *La Marche, supra*, 136 Cal.App.3d at p. 694, italics added.) The court affirmed the trial court's finding that plaintiffs' access easement had been extinguished by adverse possession, where neither plaintiffs "nor their predecessors in interest" acted to stop defendants' adverse use. (*Id*. at pp. 694-695.) Since plaintiffs did not acquire the property until 1978, it was evidently assumed the change in ownership did not interrupt or wipe out the prescriptive period.

The cases the Seviers cite are all based on inapplicable rules of law. The first was enunciated in *Jefferson* v. *Wendt* (1877) 51 Cal. 573, and relied upon in *Leonard* v. *Flynn* (1891) 89 Cal. 535, 542 [26 P. 1097], *Comstock* v. *Finn* (1936) 13 Cal.App.2d 151, 157 [56 P.2d 957], and *Laubisch* v. *Roberdo* (1954) 43 Cal.2d 702, 706-707 [277 P.2d 9]: " '[T]he statute of limitations does not commence running against a purchaser of land at a sheriff's sale until the sheriff's deed has been delivered' " to the purchaser. Neither the Seviers nor their predecessors in interest acquired such an "independent title" (see fn. 1, *ante*).

A second rule was summarized in *Laubisch* v. *Roberdo, supra*, 43 Cal.2d at page 706, citing *Comstock* v. *Finn, supra*, 13 Cal.App.2d at page 157: "A mortgagor or his grantee in possession of mortgaged property may not set up the statute of limitations against the mortgagee; the possession of the mortgagor is presumed to be amicable and in subordination to the mortgage." There is nothing analogous to the mortgagor-mortgagee relationship in this case. Nor are the facts at all similar to those in *Missionary Society* v. *Bank of America* (1936) 15 Cal.App.2d 682, 684 [59 P.2d 1060], which held that "a life tenant, as such, cannot through his possession establish an adverse title as against a remainderman, for the reason that the latter may not assert a right of possession or attack the other's possession until after the termination of the life estate." (See fn. 1, *ante*.)

It is noteworthy that in *Leonard* v. *Flynn, supra*, 89 Cal. at page 542, *Comstock* v. *Finn, supra*, 13 Cal.App.2d at pages 157-158, and *Laubisch* v. *Roberdo, supra*, 43 Cal.2d at page 707, the courts considered whether adverse possession had been established against plaintiffs and/or their predecessors in interest. Moreover, the adverse possession statutes (Code Civ. Proc., §§ 321-325) refer to occupation of the land adverse to the legal title, rather than to a particular holder thereof. (See also *Glatts* v. *Henson* (1948)

31 Cal.2d 368, 371 [188 P.2d 745] [easement extinguishable by use in manner "adverse to the exercise of the easement" for the requisite time period].)

## II

The Seviers also contend the Lochers' occupation of their driveway was insufficiently hostile and adverse. ■ Whether the various elements of adverse possession have been established is a question of fact. (*Masin* v. *La Marche, supra,* 136 Cal.App.3d at p. 693.) ■ "On appeal, when the evidence is contradictory, conflicting interpretations are presented thereby, or conflicting inferences may be drawn therefrom, that which favors the judgment must be accepted as true, and that which is unfavorable must be discarded as not having had sufficient verity for acceptance by the trial court." (*Ross* v. *Lawrence* (1963) 219 Cal.App.2d 229, 232 [33 Cal.Rptr. 135].)

■ The trial court found the Lochers' adverse possession of their driveway had extinguished the Seviers' right to use it "as a roadway for vehicles of all kinds, pedestrians and animals." In 1982, the Lochers blocked access from the driveway to the street, first with a chain and padlock and then with a six-foot high wrought-iron gate with a locking mechanism. They refused to give the Seviers a key. The Seviers' grantors had never used the driveway for any purpose.[2] Although the Seviers occasionally stepped onto the driveway through a gate in a fence along their property in order to examine plantings and top a tree, they never drove a vehicle over it until 1988.[3] As in *Ross* v. *Lawrence, supra,* 219 Cal.App.2d at page 234, the Lochers' use of their driveway "was wholly inconsistent with the right of the plaintiffs and their predecessors to use it at will for entry upon their property and, consequently, was adverse to the latter right."

The judgment is affirmed.

Low, P. J., and Haning, J., concurred.

[2] The Seviers' grantors are not parties to this appeal so we do not have before us the question of what rights, if any, the Seviers may have against their grantors.

[3] Mr. Sevier's testimony that he drives over the easement "several times" a day refers to a portion of the driveway beyond the locked gate within the county right of way.