Filed 3/28/13  Visco v. Wallace CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ALFRED V. VISCO, JR., et al., | B237805 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. YC056805) |
| v. | |
| FRED W. WALLACE, JR., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Stuart M. Rice, Judge.  Affirmed.

Law Office of Alfred Visco, Alfred Visco for Plaintiffs and Appellants.

Agnew & Brusavich, Stephen C. Rasak; The Arkin Law Firm, Sharon J. Arkin for Defendants and Respondents.

_____

This is an appeal from a judgment which declares that an easement runs over real property owned by appellants Alfred Visco and Marian Visco, in favor of real property belonging to respondents Fred Wallace and Anne Wallace; and which enjoins appellants from interfering with the Wallaces' lawful use of the easement. We affirm.

Facts

Appellants' property is at 15 Cinchring Road in Rolling Hills. The Wallaces own an adjoining lot, Parcel 164-C.

The easement in question provides the only "reasonable access" to Parcel 164-C. The parcel is accessible from hiking trails and an equestrian easement, but the terrain is rough and sloping, and without the easement, Parcel 164-C is, as a practical matter, landlocked.

The Rolling Hills Community Association has refused owners of Parcel 164-C permission to build, and although permission to build is not an issue in this case, the history of that decision, like the history of the easement, is relevant:

In 1957, a woman named Lucy Preston owned four adjacent parcels in Rolling Hills, 164-A, 164-A2, 164-B, and 164-C. Under Association rules and regulations, only 164-C was a building site, but Preston wanted to build on 164-A. The Association gave her permission to do so, but only after she agreed that the parcels would constitute only one building site (as that term is defined by the Association) and that only one residence would be built.

The easement, often called the Preston Easement, was created and recorded in 1970. The grantors were Howard and Kathryn Rustad, who owned what is now appellants' property.

It reads: "For value received, we, Howard C. Rustad and Kathryn S. Rustad, husband and wife, do hereby grant to Lucy S. Preston . . . a permanent easement over, under, across, and through the hereinafter described property, together with the right in the Grantee to grant a like easement to others over the same property for the following

2

purposes, to wit: [¶] For the construction and maintenance of a road of access . . . ; for the installation, operation and maintenance of conduits for the transmission of electricity for lighting, heating, power, telephone and other utilities, and for the necessary attachments and equipment used in connection therewith; sewers, storm water drains, land drains, pipes, water systems, water, heating and gas mains or pipes."

In 1972, Lucy Preston conveyed all of her parcels to the same buyer. In 1973, one of the parcels, Parcel 164-C, was conveyed to a man named Paul Bell. In the 1980's, he sued the Association, seeking a declaration that Preston's agreement with the Association was not enforceable, and that he could build on Parcel 164-C. He was not successful. The parties had agreed that Lucy Preston's agreement with the Association was a personal covenant, and in 1983, the trial court found, inter alia, that the covenant was enforceable against Bell, because "personal covenants may be enforceable in equity as equitable servitudes if the successor of the covenantor, against whom enforcement is sought, had notice of the covenant." The court also found that construction was barred because the Association, which had the authority to determine which sites were building sites, had determined that Parcel 164-C was not a building site.

At trial of this case, there was also evidence about a chain which stretched partly across the easement: In 1993, appellants gave their neighbors, the Johnsons, permission to put the chain up. Mr. Visco testified that he gave the Johnsons permission because the Johnsons were upset about the construction activity on the Visco property, and were "not happy" when mud slid from the Visco property to the Johnson property after a heavy rain. Thus, when Mr. Johnson asked if he could put a chain across the easement to block dirt bikers and vehicles, the Viscos agreed, in order to "bury the hatchet," and because they too had concerns about vehicles going into Parcel 164-C.

The chain did not block access to the easement. Mr. Visco testified that "you could just walk right around it," or, if you were tall enough, step over it. The chain had a lock, and the Johnsons had the key to the lock. The Viscos did not.

The chain was removed in 2009, pursuant to a partial settlement in this action.

3

In September of 2004, the Wallaces bought Parcel 164-C. They lived on Cinchring Road, and along with other neighbors had walked on Parcel 164-C. The advertising flier said that the lot was "not buildable," but they hoped to turn it into a buildable lot.

In 2006, appellants learned that the Wallaces planned to move trucks and equipment across the easement, so that there could be geological testing on Parcel 164-C. Appellants wrote a series of letters to Mr. Wallace, saying that Parcel 164-C was not buildable and that the easement had terminated or had no force and effect, and purporting to forbid the Wallaces from using the easement. Appellants also wrote to the Association, seeking to block the geological testing.

In February 2008, appellants hired a contractor to build a masonry wall across the easement, in order to prevent the Wallaces' contractor from driving across the easement. This came to the attention of the City of Rolling Hills, which directed appellants to remove the wall, informing them that it was incompatible with zoning restrictions, though a low rubble wall would be allowed. Appellants tore the wall down in June of 2008, and put up a rubble wall.

In February 2008, appellants filed this lawsuit for declaratory relief, quiet title, and injunction. The Wallaces cross-complained, bringing the same causes of action.[1]

At some point prior to trial (which was in October of 2011), the Wallaces sought the Association's permission to build a house on Parcel 164-C. In March of 2011, the Association denied that request.

Trial was to the court. In November 2011, judgment was entered on the complaint and cross-complaint. The trial court found that the Preston Easement was created by deed and "faithfully set forth and recorded in every transfer of the parcel since its creation," that the easement was valid at its creation and remained valid, that the

_____

[1] The Wallaces' cross-complaint also included allegations that appellants' irrigation, landscaping, and so on encroached on the Wallace property. That portion of the lawsuit settled.

4

easement was appurtenant, and that appellants had not met their burden of proof regarding the termination of the easement.

On the cross-complaint, the court found that with the masonry wall, appellants had attempted to impede the Wallaces from using their easement, and awarded $100 in damages. The court issued a permanent injunction prohibiting appellants from interfering with the Wallaces' lawful use of the easement "including ingress, egress, roadway, and utility purposes."

Discussion

1. The scope of the easement

Appellants begin by arguing that the court erred in issuing an injunction which prohibited them from interfering with ingress and egress. They contend that the easement is only a grant of the right to construct and maintain a road, and for utilities, and that until a road is built, the Wallaces have no right of ingress and egress. Under appellants' interpretation of the easement, the Wallaces may not drive a vehicle over the easement, or even walk over it, until a road is built.

We interpret an easement using the rules of construction applicable to deeds and contracts. The primary objective is to ascertain and carry out the intention of the parties. (*City of Manhattan Beach v. Superior Court* (1996) 13 Cal.4th 232, 238.) Here, the language of the easement makes the parties' intent clear. That intent was to give the owners of Parcel 164-C access to Parcel 164-C.

"[A]n appurtenant easement gives the dominant tenement the right to any reasonable use of the easement" (*Baccouche v. Blankenship* (2007) 154 Cal.App.4th 1551, 1557) at least where the use is consistent with the purposes for which the easement was created and does not create an additional burden on the servient tenement. (*Russell*

5

*v. Palos Verdes Properties* (1963) 218 Cal.App.2d 754, 772; *Wall v. Rudolph* (1961) 198 Cal.App.2d 684, 692; 6 Miller & Starr, Cal. Real Estate (3d ed. 2006) § 15:59.)[2]

We thus agree with the trial court that the Wallaces have the right to walk or drive on the easement, free of interference from appellants. If the Wallaces can build a road on the easement, they may walk or drive on it before construction takes place. It would be absurd to say that while they could build a road, with all the noise and bother attendant to construction, and maintain a road, they could not otherwise move across the easement.

Indeed, the easement itself does not speak of a paved road, and the Wallaces' position at trial was that a road, albeit a dirt road, had already been built on at least part of the easement. In support of that position, they introduced photographs of a dirt road, clear of trees and vegetation, and evidence that cars were sometimes parked on that road.

2. The award of damages

Appellants argue that there is no evidence that Mrs. Visco engaged in any interference with the Wallaces's rights, although there is evidence that Mr. Visco constructed a masonry wall, and that the $100 judgment against Mrs. Visco must be reversed.

Appellants do not provide us with any summary of the facts on this issue, but the Wallaces do. They direct us to, inter alia, Mr. Visco's February 2008 letter to Mr.

---

[2] Appellants argue that the easement was not appurtenant, but was personal to Lucy Preston -- or, at least, to her and her immediate successor in interest. That is, they contend that the provision that Preston "may grant a like easement to others over the same property," means that she could grant an easement to her successor in interest, but that her successor could not in turn grant the easement to another. We agree with the trial court that the easement, which is on its terms "permanent," and which includes a right to grant the easement to others, and which provides access to otherwise landlocked lot, is appurtenant, not personal. (*Elliott v. McCombs* (1941) 17 Cal.2d 23, 29.) That is so even if the language of the easement is ambiguous. "[W]hen the language of a deed is ambiguous, and it does not clearly appear whether the easement was intended to be in gross or appurtenant to land, it is never construed as personal when it may fairly be construed as appurtenant to some other estate." (*Id.* at p. 29.)

Wallace denying permission to go onto "any purported easement," and referring to "my and my wife's legal rights," and his April 2008 letter to the City, asking permission to keep the wall "placed on our property," "to help control vehicular access onto our property." In other words, as the Wallaces argue, in matters concerning the easement, Mr. Visco was acting as his wife's agent.

The Wallaces also direct us to Mr. Visco's (Mrs. Visco did not testify) testimony on cross-examination, where he was asked, inter alia, whether "you hired somebody," to put up the wall, and answered that he had. We see nothing in that testimony which changes our conclusion. The fact that the husband, rather than the wife, called the contractor, is of no moment.

Appellants also argue that there is no evidence that the Wallaces suffered any damage as a result of the wall, contending that the entire $100 award must be reversed.

"When a person interferes with the use of an easement he deprives the easement's owner of a valuable property right and the owner is entitled to compensatory damages. The interference is a private nuisance and the party whose rights have been impeded can recover damages as measured in the case of a private nuisance. [Citations.] Damages may be recovered for diminution of the property's value and for annoyance and discomfort flowing from loss of use. [Citations.]" (*Moylan v. Dykes* (1986) 181 Cal.App.3d 561, 574.) The minimal award of damages assessed by the trial court is more than supported by the evidence that the wall was constructed, brought to the attention of the City, and when torn down replaced with yet another wall designed to prevent access to the easement.

3. Appellants' contentions that the easement was terminated
a. That the easement terminated when Parcel 164-C was transferred to Paul Bell

On its face, the easement is in favor of Lot 23. Appellants argue that Lot 23 consists of two parcels, 164-C and 164-B. They argue that when Parcel 164-C was

7

transferred to Paul Bell it was "severed" from Parcel 164-B, and from Parcel 164-A. In reliance on various sections of the Restatement of Property, they argue that an appurtenant easement may not be severed from the dominant estate, because severance and transfer of the easement could substantially increase the burden on the servient estate.

The first problem with the argument is the facts. In support of their contention that Lot 23 consisted of Parcels 164-B and C, appellants rely on the stipulated facts in the Bell litigation. Those facts actually recite the inconsistent propositions that Parcel 164-C "constitutes parcel 23 and a portion of parcels 21 and 22," *and* that Lot 23 is "also known as 164-C," *and* that Parcel 164-C constitutes "a portion" of Lot 23. Given those contradictory statements, we cannot say that appellants have proved the facts underlying their contention.

Further, we cannot see that the sale of Parcel 164-C, without the remaining parcel or parcels, has created an increase in burden on the servient tenement.

Appellants' argument on this point concerns the fact that Parcels 164-A and B are not owned by the Wallaces, but by a Mark Salib. Appellants argue that the easement rights were at least purportedly conveyed to him, as well as to the owners of Parcel 164-C, causing a greater burden on the servient tenement.

We cannot say whether the owner or owners of Parcels 164-A and/or 164-B have any rights to the easement. We can say that, according to a survey in our record, the easement does not abut those parcels, and that nothing in the record indicates that the owner of those parcels has asserted a right to the easement. More importantly, that owner was not a party to this litigation, and the issue was not litigated. Appellants cannot prevail on this argument.

b. That the easement terminated because it no longer serves its intended purpose

Appellants argue that the purpose of the easement was to give Lucy Preston access to any improvements she might make in the Parcel 164-C portion of her property, and

8

was not intended to give any rights to the owner of Parcel 164-C unless that person also owned 164-A and 164-B. Thus, they argue, the separate transfer of Parcel 164-C was a change in circumstance which terminated the easement.

For their argument concerning the purpose of the easement, appellants rely on portions of Association zoning requirements (apparently, those operative when the easement was created) which allow buildings such as barns or servants' quarters to be built ancillary or accessory to a house, and on a page of the stipulated facts in the Bell litigation, though with no specific line reference.

We can see in this evidence nothing which would establish that the intent of the parties when the easement was granted was limited in the way appellants suggest. The easement was not limited to access to ancillary structures or to Lucy Preston, but provides access to the parcel, and is transferrable.

Appellants also argue that the fact that the Wallaces cannot build on Parcel 164-C means that circumstances have changed, terminating the easement. But, as the Wallaces argue, on its face the agreement between Lucy Preston and the Association lasts only "until such time as the basic restrictions are either revised, revoked, or eliminated by the passage of time," and Association could one day give an owner of Parcel 164-C permission to build.[3] As the Wallaces also argue, ancillary buildings could be built on Parcel 164-C, if the owners of Parcel 164-C leased or sold the parcel to the owners of Parcels 164-A and B.

---

[3] As appellants argue, Lucy Preston's agreement with the Association begins "[Preston] agrees *for the benefit of all the residents* of the [Association]" that her three parcels would constitute one building site. (Italics added.) Appellants seem to argue that this means that permission could never be granted, and in the trial court they suggested that if it were, litigation would ensue. Questions relating to that issue are, of course, well outside the scope of this opinion.

9

c. That the easement terminated through common law abandonment

At trial, appellants asserted that the easement was abandoned by nonuse, before the Wallaces bought Parcel 164-C. The trial court found that appellants had not met their burden of proving clear, decisive, and unequivocal evidence of an intent to abandon.

"Abandonment is a question of fact for the trial court or the jury [citation] which will not be disturbed on appeal if the trial court's determination is supported by substantial evidence. [Citation.]" (*Tract Development Services* (1988) 199 Cal.App.3d 1374, 1385.)

Appellants' argument on this point is that the substantial evidence went the other way. They point to the evidence that before 2006, no one built a road or installed utilities or used the easement to gain regular access to Parcel 164-C, and contend that evidence showed that the only use was the occasional hiker or dirt biker.

However, "an easement created by grant is not lost by mere nonuse, no matter how long, and may be lost by abandonment only when the intention to abandon clearly appears. [Citation.]" (*Tract Development Services, supra,* 199 Cal.App.3d at p. 1384.) In order to constitute abandonment, nonuse must be accompanied by "unequivocal and decisive acts on the part of the [dominant tenant], clearly showing an intention to abandon." (*Gerhard v. Stephens* (1968) 68 Cal.2d 864, 890.) "[A]bandonment hinges upon the intent of the owner to forego all future conforming uses of his property, and the trier of fact must find the conduct demonstrating the intent 'so decisive and conclusive as to indicate a clear intent to abandon . . . .' [Citation.]" (*Id.* at p. 889.)

There certainly was, as appellants argue and the trial court found, evidence of periods of nonuse, and, as appellants argue, nonuse may be evidence of intent to abandon. (*Gerhard v. Stephens, supra,* 68 Cal.2d at p. 891.) We cannot, however, say that evidence of nonuse here compels a finding of an intent to abandon. As appellants conceded at trial, the Wallaces' actions showed no intent to abandon, and given his attempts to compel the Association to give him permission to build, neither did Paul Bell, at least until he lost his litigation with the Association.

10

As appellants argue, *Gerhard, supra,* also held that a trial court can find abandonment by finding "either that the owner's future use of the right could result only from a palpably unsound business judgment or that the owner has given a further indication of his intent to abandon." (*Id.* at p. 895, fn. omitted.) However, in the footnote, the Supreme Court wrote, "We would be reluctant to assume that an *individual* abandons his right merely because sound business judgment would call for this action. The intent to abandon is subjective, and we recognize the possibility that personal pride in, and attachment to, property rights may cause an owner to adopt a less functional approach in the management of his possessions." (*Id.* at p. 895, fn. 33.) This case, of course, involves individuals.

Moreover, in their argument on this point, appellants rely on comments made by the trial court. The court said that while appellants had not proved their case "[y]ou have proven that it was a fool's errand for Mr. Wallace to think that he could take this $50,000 lot with an incredible ocean view . . . ." characterizing the purchase as "a naïve choice." From this, appellants argue that years of nonuse combined with "the fact that any further use of the [easement] is based on 'palpably unsound business judgment'" is a strong indication of intent to abandon.

First, the court's comments were just that, comments, and not findings. And, as the trial court also said, "who knows what the future will hold." We do not see that the evidence compels the finding appellants seek. It could equally be said that it would be unsound business judgment for the owner of a lot in Rolling Hills, with an incredible ocean view, to abandon the easement which provides the sole reasonable access.

d. That the easement has been terminated through adverse possession

"An easement obtained by grant may be extinguished by adverse possession by the owner of the servient tenement. [Citation.] 'The elements necessary to establish title by adverse possession are tax payment and open and notorious use or possession that is continuous and uninterrupted, hostile to the true owner and under a claim of title,' for five

years.  [Citation.]"  (*Sevier v. Locher* (1990) 222 Cal.App.3d 1082, 1084-1085.) "Whether the various elements of adverse possession have been established is a question of fact."  (*Id*. at p. 1087.)  "It is settled too that the burden of proving all of the essential elements of adverse possession rests upon the person relying thereon and it cannot be made out by inference but only by clear and positive proof.  (*Mosk v. Summerland Spiritualist Assn*. (1964) 225 Cal.App.2d 376, 382.)

On this issue, the trial court found that "there has been no open, actual, or notorious use by" appellants, citing Mr. Visco's testimony that he did not care much about the easement until the Wallaces sought to use it, because of its location and because it did not interfere with his house.  The court also found that the chain, while a barrier, was not the kind of barrier which would support a claim for adverse possession, noting that "you could step right over it.  You could go around it."

In reliance on *Sevier v. Locher, supra,* 222 Cal.App.3d 1082, appellants argue that the chain established adverse possession.  In that case, however, the owners of servient tenement "blocked access from the driveway to the street, first with a chain and padlock and then with a six-foot high wrought-iron gate with a locking mechanism," all within the same year.  They refused to give the owners of the dominant tenement a key.  (*Id*. at p. 1087.)  The trial court here discussed that case, saying, as we do, "that is a different situation than we have here."


4.  The "private driveway"

Here, appellants argue that even if the easement exists, it does not go all the way to the road.  Instead, in order to reach the road, the Wallaces would have to cross a private driveway, something which they had no right to do.

At trial, appellants presented evidence that the easement did not go all the way to Cinchring Road.  The Wallaces presented evidence that it did.

12

The trial court found that if the easement did not extend to the road, it should be declared invalid, but that there had been contradictory testimony about the private driveway, so that "I am unable to conclude that the private driveway is so private that it . . . prohibits Mr. Wallace from having access to the easement."

Appellants contend that this means that the court did not rule on the issue. To the contrary, it means that the trial court found appellants did not prove their case. In their brief, they cite the evidence in support of their position. There was such evidence, but there was evidence to the contrary -- substantial evidence for the trial court ruling.

Disposition

The judgment is affirmed. Respondents to recover costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ARMSTRONG, J.

We concur:

TURNER, P. J.

MOSK, J.

13