Filed 7/6/21

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CHARLES SCOTT BAILEY et al., Plaintiffs and Appellants, v. CITIBANK, N.A., Defendant and Appellant. | F079311 (Super. Ct. No. BCV-18-101712) OPINION |

APPEALS from a judgment of the Superior Court of Kern County.  Linda S. Etienne, Temporary Judge.  (Pursuant to Cal. Const., art VI, § 21.)

Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, Catherine E. Bennett, Barry L. Goldner and R. Jeffrey Warren for Plaintiffs and Appellants.

Severson & Werson and Jan T. Chilton for Defendant and Appellant.

-ooOoo-

In their complaint to quiet title, plaintiffs Charles Scott Bailey and Kimberley Elizabeth Bailey claimed to be rightful owners of certain real property located in Frazier Park, California (the property), based on their alleged adverse possession thereof for a five-year period.  Before that period was completed, defendant Citibank, N.A. (Citibank),

as successor in interest of a deed of trust recorded against the property long before plaintiffs' adverse possession began, foreclosed and acquired title to the property under the trustee's deed. When plaintiffs subsequently filed their complaint to quiet title, Citibank was named as the primary defendant. Citibank, however, failed to answer or otherwise respond to the complaint, and its default was entered. The trial court subsequently conducted an evidentiary hearing on plaintiffs' quiet title claim and concluded that title to the property was vested in plaintiffs, not Citibank. Citibank did not appear at the evidentiary hearing. Following the hearing, the trial court entered a judgment quieting title in plaintiffs' favor.

Thereafter, Citibank moved to set aside both the default and the judgment under the mandatory provisions of Code of Civil Procedure section 473, based on Citibank's attorney's affidavit of fault.[1] The trial court granted Citibank's motion, and the default and the judgment quieting title were set aside. Plaintiffs appeal from that order on the ground that no basis existed for potential relief under section 473 since Citibank's attorney was not retained to handle this case until after the default was entered. In response to plaintiffs' appeal, Citibank has filed a protective cross-appeal, arguing that even if relief under section 473 was unavailable, the judgment quieting title in plaintiffs' favor was erroneous as a matter of law and should be reversed. We agree with Citibank. Although the trial court erred in granting relief under section 473, which order is reversed, under Citibank's cross-appeal the underlying judgment quieting title is also reversed. Moreover, because the undisputed facts show Citibank is the owner of the property as a matter of law, on remand the trial court is instructed to enter a new judgment in Citibank's favor.

---

[1]     Unless otherwise indicated, further statutory references are to the Code of Civil Procedure.

## FACTS AND PROCEDURAL HISTORY

The 2005 Deed of Trust

We begin by describing the original ownership of the property prior to plaintiffs' commencement of their adverse possession. Robert Lifson and his wife, Toni Black, acquired the property by grant deed in 2004. In 2005, they executed a deed of trust to secure a $582,000 loan from Option One Mortgage Corporation. The deed of trust was recorded on September 1, 2005, and the beneficiary named therein was Option One Mortgage Corporation (the 2005 deed of trust). In 2008, Lifson and Black defaulted on the secured loan. A notice of default and election to sell under deed of trust was recorded. Lifson and Black responded by filing a series of bankruptcy petitions. Whether due to the bankruptcy filings or other reasons, no notice of trustee's sale was recorded at that time; the foreclosure process came to a halt and did not proceed for nearly a decade.

Plaintiffs' Adverse Possession Commences

Meanwhile, in 2013, plaintiffs observed the property was unoccupied. On June 28, 2013, plaintiffs took possession of the property without permission and claimed it as their own. Their possession of the property was open and obvious. Since that time, plaintiffs have stored equipment and trailers on the property, kept chickens, pigs and goats there, made repairs to the residence, and paid the assessed property taxes each year when due.

Citibank Becomes Successor of the 2005 Deed of Trust

The 2005 deed of trust, which continued to constitute a lien or encumbrance on the property, was assigned by the original beneficiary and subsequently assigned two more times. In 2017, under a duly recorded assignment, Citibank became the successor in interest of the 2005 deed of trust. Thereafter, Citibank, as the "present Beneficiary under said Deed of Trust," recorded a substitution of trustee. The new trustee proceeded to record a rescission of the former 2008 notice of default, and then recorded a new,

3.

operative notice of default. In February 2018, a notice of trustee's sale was recorded. The trustee's sale was conducted on April 2, 2018, and Citibank, the foreclosing beneficiary, became the owner of the property pursuant to the trustee's deed (or the "TRUSTEE'S DEED UPON SALE") dated April 4, 2018, which was duly recorded on April 12, 2018.

Plaintiffs' Complaint to Quiet Title

On July 16, 2018, approximately three months after Citibank's foreclosure was completed, plaintiffs filed their complaint to quiet title. The complaint contained a single cause of action seeking to quiet title to the property in plaintiffs' favor based on their alleged adverse possession. Plaintiffs alleged they had openly and adversely possessed the property for five years, as of June 28, 2013, and had also paid the property taxes during that five-year period.

Citibank Serves a Notice to Quit

On July 28, 2018, plaintiffs forwarded to their attorney a "Notice to Quit" that had been served on plaintiffs by Citibank's eviction or unlawful detainer attorneys (eviction counsel), dated July 25, 2018. Plaintiffs' attorney responded by contacting Citibank's eviction counsel and (i) informed them of plaintiffs' pending lawsuit seeking to quiet title to the property, and also (ii) provided a copy of plaintiffs' complaint to quiet title and the related lis pendens. Upon receiving this information, Citibank's eviction counsel indicated they were unaware of plaintiffs' claim of ownership and stated they would have to confer with their client. However, no further communication was received from Citibank's eviction counsel.

Citibank's Default Taken

Plaintiffs' complaint was served by mail on Citibank on October 3, 2018. When Citibank failed to answer or otherwise respond to the complaint, plaintiffs requested and obtained Citibank's default. On November 14, 2018, default was entered against Citibank. Notice of entry of default was served on Citibank on November 15, 2018.

4.

Evidentiary Hearing on Plaintiffs' Quiet Title Claim

On February 13, 2019, the trial court conducted an evidentiary hearing on plaintiffs' quiet title claim. There was no live testimony at the hearing. The evidence presented by plaintiffs included the complaint, the declaration of plaintiffs' attorney Barry Goldner and attached exhibits, the declarations of plaintiffs (both Charles Scott Bailey and Kimberley Elizabeth Bailey), and a request for judicial notice of numerous recorded documents. The recorded documents included the 2005 deed of trust, the assignment of the 2005 deed of trust to Citibank, and the April 2018 trustee's deed. Plaintiffs also submitted a trial brief in support of their request for judgment. After hearing the evidence, the trial court took the matter under submission.

Days later, the trial court ruled that plaintiffs are the owners in fee simple of the real property described in the complaint, not Citibank. Accordingly, a written judgment quieting title in plaintiffs' favor was entered by the trial court. Notice of entry of judgment was filed and served on February 21, 2019.

Citibank's Motion for Relief under Section 473

On March 11, 2019, Citibank served and filed an ex parte application to set aside the judgment under section 473. In support of the application, Citibank submitted a declaration by its attorney, Jeremy Katz, asserting that he was assigned to the case on January 10, 2019, and at that time learned of the prior default taken by plaintiffs against Citibank. However, due to attorney Katz's admitted failure to take any action or to calendar the matter or otherwise monitor the situation, the default prove-up hearing took place without Citibank's appearance and judgment was entered.

Attorney Katz's declaration was obviously for the purpose of obtaining relief based on an attorney affidavit of fault under section 473. In light of the importance of the content of the declaration to the question of whether relief was properly granted, we shall quote portions of it verbatim.

5.

In relevant part, Katz stated in his declaration as follows: "1. I was assigned to be the handling attorney for this matter on January 10, 2019. [¶] 2. On January 10, 2019, upon being referred this matter, I was informed that Plaintiffs had sent the summons and complaint to Citibank's unlawful detainer counsel in July 2018 and that Plaintiffs had taken Citibank's default. My intent at the time was to first contact Plaintiffs' counsel to see if they would stipulate to set aside the default, as that would be the simplest and most efficient way to resolve the issue. If Plaintiff's counsel would not stipulate to set aside the default, my intent was to affirmatively seek relief from the entry of default. And, if the court was not inclined to set aside the entry of default, my intent was to actively monitor the Court's docket so that Citibank could still appear and present rebuttal evidence at any subsequent quiet title prove-up hearing. Although the proof of service on file with the Court indicates that service was effectuated on Citibank in October 2018 by mail with return receipt requested, it is currently unknown why the complaint was not properly processed in order to ensure that Citibank made an appearance prior to any attempted default. [¶] 3. Accordingly, I made personal notes at that time to investigate whether the summons had been properly served, to follow up with Plaintiffs' counsel, to seek … relief from the entry of default if needed, and to actively monitor the court's docket to make sure that I was aware of any quiet title prove-up proceedings. I sent my legal assistant an email on January 10, 2019 instructing my assistant to activate my calendar notices for this matter in my firm's calendaring system. [¶] 4. Unfortunately, I did not reach out to Plaintiff's counsel immediately upon being referred the matter as I was in the process of finalizing a summary judgment motion in one of my other matters. Compounding things, I unfortunately did not expressly ask my assistant to calendar any follow-up reminders to reach out to Plaintiffs' counsel or actively monitor the Court's docket. Nor did I manually add such reminders myself. Nor did I expressly instruct my staff to actively monitor the Court's docket. [¶] 5. As a result of my inadvertent failure to properly instruct my [assistants] and ensure that such reminders were in place in my

6.

calendaring system, I did not contact Plaintiffs' counsel or actively monitor the Court's docket. Had I done so, I would have reached out to Plaintiffs' counsel and/or been aware that Plaintiff had filed a default prove-up packet on January 28, 2019, and would have taken appropriate action in response. [¶] 6. On or about March 5, 2019, … I then checked the court's online docket, and discovered that a default judgment had been entered against Citibank on February 19, 2019."

Citibank's points and authorities in support of their application under section 473 included argument that the judgment quieting title was erroneous as a matter of law. A proposed demurrer making the same argument was also submitted in support of the application.

Plaintiffs filed opposition to Citibank's motion, arguing that mandatory relief under section 473 based on the attorney affidavit of fault was not available under the circumstances because attorney Katz was not retained until after default was entered. Further, plaintiffs argued that discretionary relief was likewise not available under section 473 because no explanation was ever provided for Citibank's unreasonable delay and inaction.

The hearing was held on March 28, 2019. On March 29, 2019, the trial court issued its ruling to grant the motion. The trial court explained that although it was denying *discretionary* relief because there was no evidence to support a finding of mistake, surprise, inadvertence or excusable neglect on the part of Citibank, the court was granting *mandatory* relief based on the fault of Citibank's attorney. The trial court noted that the quiet title statute, at section 764.010, would have permitted the presentation of rebuttal evidence at the prove-up hearing by Citibank, even though Citibank had defaulted. Thus, "through the fault of Citibank's attorney, it was deprived of the opportunity to present evidence that the court would have been compelled to hear." Accordingly, the trial court held "[t]he default and default judgment as to the moving party are set aside and vacated."

7.

A formal written order setting aside both the default and the judgment quieting title to real property was filed on May 3, 2019.

<u>Plaintiffs' Appeal and Citibank's Cross-Appeal</u>

On May 20, 2019, plaintiffs timely filed their notice of appeal from the trial court's order setting aside the default and the judgment quieting title. Plaintiffs' appeal contends the trial court erred in granting relief under section 473 under the circumstances of this case.

On June 5, 2019, Citibank filed notice of its cross-appeal from the "Default Judgment Quieting Title to Real Property." Citibank argues in its cross-appeal that, as a matter of law, plaintiffs' evidence did not show possession was hostile and adverse to Citibank for the required five-year period. Also, with reference to plaintiffs' appeal, Citibank asserts that its cross-appeal moots plaintiffs' appeal, but in any event, Citibank argues the trial court did not prejudicially err in setting aside the default and default judgment due to the unique nature of a prove-up hearing in a quiet title action.

## **DISCUSSION**

### I. **Plaintiffs' Appeal from Order Granting Section 473 Relief**

In their appeal, plaintiffs argue the trial court erred in setting aside the default and judgment under the mandatory relief provision of section 473. As explained below, we agree with plaintiffs. We begin our discussion of this issue with a brief overview of how default proceedings are conducted in quiet title actions, because it appears that a unique aspect thereof was dispositive to the trial court's decision.

A. <u>Default Proceedings in Quiet Title Cases</u>

The legal effect of a defendant's default in a quiet title action differs in certain respects from that which occurs in other types of cases. To make these differences clear, we first point out the usual or standard consequences of a defendant's default in cases alleging other, i.e., non-quiet title, causes of action. Generally, when a defendant's default is taken it will—unless set aside—have dire effects on that defendant's right to

participate in the case. The entry of a defendant's default cuts off the defendant's right to file pleadings and motions (other than a motion to set aside default under § 473), and it also cuts off the defendant's right to notices and the service of pleadings or papers. (*Steven M. Garber & Associates v. Eskandarian* (2007) 150 Cal.App.4th 813, 823–824; *Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1301.) Moreover, the trial court, in connection with rendering a default judgment, will treat the well-pled allegations of the complaint as *admitted* by the defaulting defendant, and therefore the plaintiff is not required to provide evidence as to such issues. (*Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 281.) Finally, the defaulting defendant is not entitled to advance any contentions on the merits, or to participate at all in the default proceedings. (*Steven M. Garber & Associates v. Eskandarian*, *supra*, at pp. 823–824.)

However, where a quiet title action is concerned, the process for entering a judgment is governed by the specific requirements of the quiet title statutory scheme codified at section 760.010 et seq. Of particular importance here, section 764.010 of that statutory scheme provides as follows: "The court shall examine into and determine the plaintiff's title against the claims of all the defendants. *The court shall not enter judgment by default* but shall in all cases require evidence of plaintiff's title and hear such evidence as may be offered respecting the claims of any of the defendants, other than claims the validity of which is admitted by the plaintiff in the complaint. The court shall render judgment in accordance with the evidence and the law." (§ 764.010, italics added.) Recent appellate decisions have construed this statutory wording to mean that, in contrast to the usual rules of default, in a quiet title action the plaintiff is not entitled to entry of judgment *as a matter of course*, but must affirmatively prove its case in an evidentiary hearing at which the trial court must hear *all* the evidence offered concerning title, *including* evidence that may be presented at the hearing by a defaulting defendant. (See *Harbour Vista, LLC v. HSBC Mortgage Services Inc.* (2011) 201 Cal.App.4th 1496, 1502, 1504–1505 (*Harbour Vista*); *Nickell v. Matlock* (2012) 206 Cal.App.4th 934, 947.)

9.

In other words, as convincingly reasoned by the *Harbour Vista* and *Nickell* cases, a defaulting defendant in a quiet title action is not barred from participating in the evidentiary hearing but may appear at said hearing and present evidence relating to title.[2]

In the present case, although Citibank admitted it did not engage an attorney to handle this matter until after default was already entered, it appears the trial court was nevertheless persuaded it should grant mandatory relief under section 473 because the fault of Citibank's attorney deprived Citibank of an opportunity to appear and present evidence at the required evidentiary hearing. Having explained the quiet title context and rationale of the trial court's ruling, we next consider whether, under the circumstances, that ruling is consistent with the mandatory relief provision of section 473, subdivision (b).

B. Mandatory Relief Provision and Standard of Review

Section 473, subdivision (b), contains two distinct provisions for relief: one is discretionary and is reserved for situations of excusable neglect, while the other is mandatory and applies even to inexcusable neglect of an attorney resulting in his or her client's default provided that the attorney submits an adequate affidavit of fault. (See *Martin Potts & Associates, Inc. v. Corsair, LLC* (2016) 244 Cal.App.4th 432, 438; *Todd v. Thrifty Corp.* (1995) 34 Cal.App.4th 986, 990–991.) Here, the trial court rejected discretionary relief from the default and default judgment but found that mandatory relief

---

[2] As noted in *Harbour Vista*, a defaulting defendant in a quiet title action is still "severely disadvantaged" by the default since the plaintiff is no longer required to serve documents or give notice of any future court dates. (*Harbour Vista*, *supra*, 201 Cal.App.4th at p. 1505.) "This cuts the defendant off from the most readily available source of information about the case. The defendant also cannot participate in any other hearings or conferences with the court. In fact, the most likely outcome is that the defaulting defendant will not learn of the hearing to adjudicate title until it is too late to attend." (*Ibid.*)

was available based on Citibank's attorney's declaration of fault.[3]  Plaintiffs appeal from that order.  The sole issue on appeal is whether grounds for mandatory relief were presented—i.e., whether the requirements for such relief under the statute were met.  "Whether section 473, subdivision (b)'s requirements have been satisfied in any given case is a question we review for substantial evidence where the evidence is disputed and de novo where it is undisputed." (*Martin Potts & Associates, Inc. v. Corsair, LLC*, *supra*, 244 Cal.App.4th at p. 437.)  The underlying facts in this case appear to be undisputed, therefore we apply de novo review.

The mandatory relief provision of section 473, subdivision (b), states as follows: "Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, *unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect.*" (§ 473, subd. (b), italics added.)  When a complying affidavit is filed relief is mandatory, even if the attorney's neglect was inexcusable. (*Rodrigues v. Superior Court* (2005) 127 Cal.App.4th 1027, 1033.)  However, relief may be denied if the court finds the default was not in fact the attorney's fault, for example when the attorney is simply covering up for the client's neglect.  (*Ibid.*; *Rogalski v. Nabers Cadillac* (1992) 11 Cal.App.4th 816, 821.)  Similarly, where a party inexcusably allows default to be entered and then afterwards hires an attorney, the provision does not

[3]     The validity of the denial of discretionary relief is not raised by either party as an issue on appeal.  In any event, the trial court's ruling on that issue was clearly correct since there was no evidence to show any possible excusable basis for the client's, i.e., Citibank's, delay and inaction after being served with the complaint.

11.

apply because the default must in fact be caused by *the attorney's* mistake. (*Cisneros v. Vueve* (1995) 37 Cal.App.4th 906, 908, 910–912 (*Cisneros*).)

C. <u>Mandatory Relief Was Not Available</u>

In *Cisneros*, *supra*, 37 Cal.App.4th 906, the Court of Appeal held, based on the unequivocal language of the mandatory relief provision of section 473, subdivision (b), that "this provision does not afford relief to a client who, after inexcusably allowing his default to be entered, hires an attorney whose neglect results in a default judgment." (*Cisneros*, *supra*, at p. 908.) In so holding, *Cisneros* focused on the "unless" clause, which states that mandatory relief shall be granted based on an attorney affidavit of fault "unless the court finds that the default … was not in fact caused by the attorney's mistake … or neglect." (§ 473, subd. (b); see *Cisneros*, *supra*, at pp. 909–912.) As the court explained: "[W]hile the amendment [enacting the mandatory provision] authorizes *relief* from both default and default judgment, the statute is equally clear that for mandatory relief to apply the court must also satisfy itself that the *default* (i.e., the failure to respond) was in fact caused by attorney mistake or neglect." (*Cisneros*, *supra*, at pp. 910–911.) Further, "[n]othing in the legislative history [of the mandatory provision] … indicates that the Legislature intended mandatory relief for neglectful clients who allow their default to be entered simply because that neglect is compounded by attorney neglect in permitting the judgment to be perfected." (*Id*. at p. 911.) Based on the clear wording of the "unless" clause, the court found it created a necessary test of "causation" relating to the default. (*Id*. at p. 912.) As the court concluded: "The statute mandates relief 'unless the court finds that the default … was not *in fact caused* by the attorney's mistake, inadvertence' etc. (Italics added.) While attorney cover-up is obviously one instance in which the default would not truly be caused by the attorney, there are others like the one at bar in which a neglectful client permits the default to be taken against him before retained counsel enters the scene. [¶] Because [the attorney] was not representing defendants at the time the default was entered, we find as a matter of law, that he was not

the proximate cause of the entry of default as defined in the 'unless clause.'  Hence, the trial court properly concluded that defendants were not entitled to relief under the attorney affidavit provisions of section 473." (*Ibid*., fn. omitted.)

Here, it is undisputed that Citibank's default was entered on November 14, 2018, but Citibank's attorney, Jeremy Katz, was not referred or assigned to act as attorney on this case until January 10, 2019.  Because attorney error could not possibly have caused the default in this case, mandatory relief was unavailable under the reasoning of *Cisneros* as a matter of law.  (Accord, *Cowan v. Krayzman* (2011) 196 Cal.App.4th 907, 915 [no relief where attorney not representing defendants at time default was entered].)

Citibank argues that because of the differences in the consequences of default in a quiet title case as compared to other cases, we should uphold the trial court's decision to grant mandatory relief in this unique setting.  We decline to do so because we are bound to follow and apply the clear statutory wording of section 473.  As correctly observed in *Cisneros*, the default and default judgment are distinct procedures, and the Legislature made specific and careful use of each and understood the distinction between them. (*Cisneros*, *supra*, 37 Cal.App.4th at p. 910.)  The mandatory relief provision is unambiguous, and it plainly requires that attorney fault be the cause-in-fact of the *default* (i.e., the failure to respond), and not merely of the ensuing judgment.  (*Id.* at pp. 910–911.)  In short, we are not at liberty to disregard the plain meaning of section 473 simply because the consequences of the default are not as severe in a quiet title case.  (See *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 ["If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature"]; *People v. Snook* (1997) 16 Cal.4th 1210, 1215 ["If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs."].)

Based on the foregoing, we conclude the trial court erred as a matter of law in granting mandatory relief under section 473, subdivision (b).  Accordingly, the order

granting Citibank's motion to set aside both the default and the judgment quieting title is reversed.  This effectively revives the underlying judgment quieting title, which is presumed to be correct on appeal and would have to be affirmed *unless* Citibank's cross-appeal therefrom has successfully demonstrated that the judgment must be reversed.  (Eisenberg et al., Cal. Practice Guide:  Civil Appeals and Writs (The Rutter Group 2020) ¶ 3:169, p. 3-77; see, e.g., *Sanchez-Corea v. Bank of America* (1985) 38 Cal.3d 892, 910; *Mercer v. Perez* (1968) 68 Cal.2d 104, 124; cf. *Adams v. City of Fremont* (1998) 68 Cal.App.4th 243, 261, fn. 15.)  This leads us to our consideration of the merits of the cross-appeal.

## II.  Citibank's Cross-Appeal from the Judgment Quieting Title

As noted, Citibank has filed a protective cross-appeal challenging the judgment quieting title.  According to Citibank, the judgment must be reversed because it is unsupported by any evidence on essential elements of an adverse possession claim; namely, possession that is hostile and adverse to Citibank's title for a full five years.[4] For the reasons explained below, we agree with Citibank.

In an action to quiet title based on adverse possession, the burden is upon the plaintiff to establish every necessary element.  (*Dimmick v. Dimmick* (1962) 58 Cal.2d 417, 421.)  The elements of an adverse possession claim consist of the following: (1)  actual possession by the plaintiff of the property under claim of right or color of title; (2) the possession consists of open and notorious occupation of the property in such a manner as to constitute reasonable notice to the true owner; (3) the possession is adverse and hostile to the true owner; (4) the possession is uninterrupted and continuous for at

---

[4]    We note the five-year period necessary for adverse possession is sometimes referred to in the cases as a statute of limitations.  (See *Laubisch v. Roberdo* (1954) 43 Cal.2d 702, 706–707; Code Civ. Proc., §§ 321, 325, subd. (b); Civ. Code, § 1007.)  The five-year period is an element of an adverse possession claim, but also operates as a statute of limitations against the true owner of the land.  (*De Frieze v. Quint* (1892) 94 Cal. 653, 662–663.)

least five years; and (5) the plaintiff has paid all taxes assessed against the property during the five-year period. (*Hansen v. Sandridge Partners, L.P.* (2018) 22 Cal.App.5th 1020, 1032–1033; *Buic v. Buic* (1992) 5 Cal.App.4th 1600, 1604; *Gilardi v. Hallam* (1981) 30 Cal.3d 317, 321.)[5] Unless each of these elements is established by the evidence, the plaintiff has not acquired title by adverse possession. (*West v. Evans* (1946) 29 Cal.2d 414, 417.)

Based on our review of the undisputed facts and applicable law, we conclude plaintiffs have not established that their possession of the property was adverse or hostile to Citibank for the required five-year period. Rather, as we shall make clear, plaintiffs' possession of the property did not become adverse or hostile to Citibank's rights until such time as Citibank actually took title under the trustee's deed in April of 2018, only a few months before plaintiffs' complaint was filed. Significantly, the trustee's deed was based upon the foreclosure of the 2005 deed of trust—a deed of trust that was executed and recorded as a lien or encumbrance on the property long before plaintiffs' adverse possession began. Under such facts, during the time period when Citibank's interest was merely that of beneficiary of the 2005 deed of trust (i.e., a lienholder), plaintiffs' possession of the property would not be considered hostile to Citibank's rights. Additionally, plaintiffs could gain no greater title than that of the original owners they had dispossessed; namely, title *subject to* the 2005 deed of trust. Consequently, plaintiffs' adverse possession claim was subject to and eliminated by Citibank's foreclosure of the 2005 deed of trust. Below, we explain each of our conclusions more fully in light of applicable law.

---

[5]      The requirement that the possession be hostile does not mean the parties must have a dispute as to title during the period of possession, but that the claimant's possession must be adverse to the rights of the record owner. (*Sorensen v. Costa* (1948) 32 Cal.2d 453, 459.)

A. Plaintiffs' Possession Was Not Adverse to Citibank's Rights as Trust Deed
Beneficiary Under Preexisting Deed of Trust

At its most basic level, the doctrine of adverse possession relates to *possessory* estates, i.e., it involves possession of property hostile to the corresponding rights of the true owner. (*Gilardi v. Hallam*, *supra*, 30 Cal.3d 317, 321; *Sorensen v. Costa*, *supra*, 32 Cal.2d 453, 460 [statute accrues when owner deprived of possession]; see *Unger v. Mooney* (1883) 63 Cal. 586, 590.) Here, however, Citibank's interest in the property until it obtained fee title under the 2018 trustee's deed was not that of an owner with a right of possession, but merely that of a trust deed beneficiary. Therefore, under the particular facts of this case, prior to Citibank gaining possessory rights at the time of the foreclosure sale and delivery of the trustee's deed in 2018, plaintiffs' occupation of the property was not hostile to Citibank's rights as a secured lienholder, and therefore the five-year statute was not running against Citibank under the undisputed facts of this case.[6]

In our discussion of these principles, an elaboration of the nature of the interest held by a trust deed beneficiary, i.e., Citibank's interest prior to foreclosure, is helpful. " '[D]eeds of trust, except for the passage of title [to the trustee] for the purpose of the trust, are practically and substantially only mortgages with a power of sale ….' " (*Monterey S.P. Partnership v. W. L. Bangham, Inc*. (1989) 49 Cal.3d 454, 460.) "In practical effect, if not in legal parlance, a deed of trust is a lien on the property." (*Ibid*.)

---

[6] An exception exists to this analysis, although it is not applicable to this case. Namely, where a transfer affecting the state of title (e.g., the recording of a deed of trust or a grant deed) is made *after* the adverse possession has already begun, a successful claim of adverse possession will prevail over the subsequent transferee's title once the five-year period is completed. (See *Sevier v. Locher* (1990) 222 Cal.App.3d 1082, 1084–1085; cf. *Le Roy v. Rogers* (1866) 30 Cal. 229.) In other words, once adverse possession has begun, *subsequent* transfers during the statutory period do not affect it. That rule does not assist plaintiffs here, because the deed of trust in this case was recorded and effective as a lien or encumbrance on the property prior to plaintiffs' possession thereof.

It conveys title to the trustee only so far as may be necessary to the execution of the trust for purposes of security. (*Ibid*.) Thus, "[t]he right to possession does not pass to the trustee or the beneficiary under a trust deed in the absence of a special agreement." (*Snyder v. Western Loan & Bldg. Co.* (1934) 1 Cal.2d 697, 701.) To summarize, a deed of trust carries none of the incidents of ownership of the property, other than the trustee's right to convey upon default, and in the absence of a special agreement conveys no right of possession to the trustee or beneficiary. (*Ibid*.; *MacLeod v. Moran* (1908) 153 Cal. 97, 99; *Zolezzi v. Michelis* (1948) 86 Cal.App.2d 827, 830.) Because of their similarities, deeds of trust and mortgages are generally treated as analogous under the law. (See, e.g., *Monterey S.P. Partnership v. W. L. Bangham, Inc.*, *supra*, 49 Cal.3d at pp. 460–461; *Snyder v. Western Loan & Bldg. Co.*, *supra*, 1 Cal.2d at pp. 701–702.) "[T]he substantial rights of the parties should not be altered because of the more or less accidental form which the security takes." (*Wilson v. McLaughlin* (1937) 20 Cal.App.2d 608, 611 (*Wilson*).) For these reasons, in the context of adverse possession law it is appropriate to apply the cases discussing the status of mortgagees to that of the situation here of a trust deed beneficiary.

For purposes of a claim of adverse possession, "[t]o be considered hostile, the acts relied upon must operate as an invasion of the right of the party against whom they are asserted." (*Laubisch v. Roberdo*, *supra*, 43 Cal.2d 702, 706, citing *City of San Diego v. Cuyamaca Water Co.* (1930) 209 Cal. 105, 133.) Because, as here, a trust deed beneficiary does not have a right of possession, but stands in substance as a lien holder, the occupation of the property by a person seeking to acquire title by adverse possession would not be considered hostile to the trust deed beneficiary whose rights under the preexisting trust deed would be unaffected. (See *Comstock v. Finn* (1936) 13 Cal.App.2d 151, 156–158 [applying this principle in context of a mortgagee].) As our Supreme Court observed in a case involving foreclosure of a mechanics lien where an occupying party claimed adverse possession: "The situation here is analogous to a mortgagor-mortgagee

17.

relationship. A mortgagor or his grantee in possession of mortgaged property may not set up the [adverse possession] statute of limitations against the mortgagee" since such possession is "presumed to be amicable and in subordination to the mortgage." (*Laubisch v. Roberdo, supra*, 43 Cal.2d at p. 706.) Instead, the five-year period of the statute of limitations would not commence to run against a foreclosing mortgagee until the deed was delivered to him at a sheriff's sale. (*Id*. at pp. 706–707.) Applying these principles, the Supreme Court held that the occupier's possession was "not hostile" to the interests of one "who had only *a lien* upon the land," and was not hostile to the purchaser at the foreclosure sale until the time the commissioner's deed was obtained. (*Id*. at p. 707, italics added; accord, *Baumgarten v. Mitchell* (1909) 10 Cal.App. 48, 51–52 [where mortgage preexisted the period of alleged adverse possession, the right of the foreclosing mortgagee prevailed and was not affected by alleged claim of adverse possession].)

 *Comstock v. Finn, supra*, 13 Cal.App.2d 151 (*Comstock*) further exemplifies the application of these principles. In *Comstock*, the defendant in a postforeclosure ejectment action claimed title or ownership to the property based on adverse possession. The defendant asserted that her possession of the property was adverse and hostile even as against the mortgagee where the mortgage preexisted the period of alleged adverse possession. The trial court denied the defendant's claim of adverse possession, holding the possession was not adverse or hostile to the mortgagee, whose interest was merely that of an " 'owner of the mortgage lien' " on the property during much of the five-year period, and the trial court's reasoning and conclusion were affirmed on appeal. (*Id*. at pp. 155–158.) In affirming the judgment, *Comstock* relied on two distinct rationales. The first was the general rule that the possession of property by a mortgagor or his or her assignees " 'cannot be adverse' " to the mortgagee unless or until the possessor's conduct has invaded the mortgagee's rights *under the mortgage*. (*Id*. at p. 156.) Based on this rule, *Comstock* held the trial court had reasonably concluded that the possession of the

property, although open and notorious, was not hostile to the rights of the mortgagee. (*Id*. at p. 157.)

The second rationale relied on by *Comstock* was based on the recognition that a mortgagee ordinarily does not have a right of possession. (*Comstock*, *supra*, 13 Cal.App.2d at pp. 156–157.) *Comstock* explained the significance of this fact at length:

> "A further reason appears why the judgment must be affirmed. In California a mortgage does not give the mortgagee right of possession of the mortgaged premises in the absence of a special agreement to that effect. Neither the United States Building and Loan Association [i.e., the assignee of the original mortgage], nor plaintiff [i.e., the receiver who purchased the property at the foreclosure sale], had any right of possession of the mortgaged premises … until delivery of the sheriff's or commissioner's deed. [Citation.] A situation involving a legal principle similar to the one before us was before the Supreme Court in the case of *Leonard v. Flynn* [(1891)] 89 Cal. 535, where it was said: 'Plaintiff's grantor, as we have already seen, was not possessed of the legal title to this tract of land until he received the deed from the sheriff [in 1888]. He had no right of entry until that time, and it was only at that time that his cause of action accrued. The statute of limitations does not begin to run until the cause of action has accrued. [Citation.] If he had no right of entry until 1888, it would be a harsh rule to hold that a title by adverse possession was undergoing the process of creation against him prior to that time …. [Citation.] … [I]t is of vast importance that the law as heretofore laid down by this court should be deemed unquestioned and conclusive. "The statute of limitations does not commence running against a purchaser of land at a sheriff's sale until the sheriff's deed has been delivered to the purchaser." [Citation.]' " (*Id.* at p. 157.)

As the above discussion indicates, apart from a right to possession by the mortgagee, a claim of adverse possession would not accrue against the mortgagee as such, at least with respect to the circumstance of a preexisting mortgage as existed in *Comstock*. Applying this rationale to the case before it, *Comstock* stated:

> "It follows that as plaintiff's [the receiver's] right of possession did not accrue until June 6, 1932, and as there had been no holding of possession hostile and adverse to his interest prior to that time[,] no title by adverse possession was established against him or his predecessor in interest [the mortgagee]." (*Comstock*, *supra*, 13 Cal.App.2d at pp. 157–158.)

19.

Based on the entire analysis presented in *Comstock*, the principle that emerges is that where a mortgage was recorded prior to the start of the period of alleged adverse possession, the possession of the land will not be deemed hostile or adverse to the rights of the mortgage holder or to a successor thereof, *until* such time as a right to possession of the property is acquired under the mortgage through foreclosure and delivery of the trustee's deed. (*Comstock, supra*, 13 Cal.App.2d at pp. 155–158; see *Harvey v. Nurick* (1968) 268 Cal.App.2d 213, 215 [since a mortgage does not give the mortgagee the right of possession in the absence of a special agreement, the adverse possession statute does not begin to run in the possessor's favor "until foreclosure and … the delivery of the trustee's deed"].) *Comstock* also made the following important clarification of the case law: "There are cases holding that a person in possession may gain title by adverse possession, against a mortgagee, where the adverse possession antedated the mortgage. Those cases are not controlling here, as in the instant case the asserted adverse possession started, if at all, subsequent to the date and recordation of the mortgage." (*Comstock, supra*, 13 Cal.App.2d at p. 158.)

Here, based on the recorded documents and other undisputed facts and in light of the relevant legal principles outlined hereinabove, we conclude that plaintiffs' possession of the property did not become adverse or hostile to Citibank's rights until such time as Citibank took fee title under the trustee's deed in 2018, only a few months before plaintiffs' complaint was filed. As we have explained, the 2018 trustee's deed was based upon the foreclosure of the 2005 deed of trust—a deed of trust that was executed and recorded as a lien or encumbrance on the property long before plaintiffs' adverse possession began. Under such facts, plaintiffs' claim of adverse possession fails as a matter of law.

B. Plaintiffs Could Gain No Greater Title Than the Original Owners They Dispossessed

A second reason we conclude Citibank's cross-appeal must prevail is this: When adverse possession is being claimed, the possessor—assuming he or she prevails on the

claim—can gain only the title which the owners had when the adverse possession began; and conversely, the possessor cannot, by adverse possession, acquire a greater estate than that held by the owner. (*Williams v. Sutton* (1872) 43 Cal. 65, 73 [the title acquired by the adverse possessor "must of necessity correspond with that on which the disseizin operated, as he could not acquire by disseizin a greater estate than that held by" the prior owner].)[7] Thus, where the claim of adverse possession is concerning the title to property that was subject to a previously recorded deed of trust, the possessor can only gain a corresponding title—that is, a title subject to the prior deed of trust. Consequently, in the present case, the most that plaintiffs could ever have potentially obtained as a result of their possession initiated against the original owners was a title *subject* to the preexisting 2005 deed of trust.

The correctness of this analysis is further confirmed by the well-established principle that the title obtained by a trustee's deed on foreclosure *relates back* to the status of the title held by the trustor when the deed of trust was originally executed and recorded. (See *Dover Mobile Estates v. Fiber Form Products, Inc.* (1990) 220 Cal.App.3d 1494, 1498 [title obtained by trustee's deed on foreclosure relates back to execution of the trust deed].) "The trustee's deed therefore passes the title held by the trustor at the time of execution," free of liens or encumbrances attaching after the deed of trust was recorded. (*Id.* at p. 1498; accord, *Nativi v. Deutsche Bank National Trust Co.* (2014) 223 Cal.App.4th 261, 272; *R-Ranch Markets #2, Inc. v. Old Stone Bank* (1993) 16 Cal.App.4th 1323, 1328; *Sain v. Silvestre* (1978) 78 Cal.App.3d 461, 471 [purchaser at foreclosure acquired title free of equitable servitudes recorded after recording of trust deed].)

---

[7] We note "disseizin" is an old term for wrongful dispossession. As Black's Law Dictionary states, it is "[t]he act of wrongfully depriving someone of the freehold possession of property." (Black's Law Dict. (11th ed. 2019) p. 594.)

In conclusion, plaintiffs' claim of ownership by adverse possession fails as a matter of law for two basic reasons. First, the undisputed record shows that plaintiffs' possession was not adverse or hostile to Citibank for the required five-year period. Second, plaintiffs' attempt to acquire title by engaging in adverse possession, even assuming it had been successful, could only have gained a title corresponding to, but not greater than, the original owners' title; that is, title subject to the 2005 deed of trust of which Citibank was the foreclosing beneficiary in 2018. Based on the foregoing, it is clear that Citibank holds the rightful title and ownership of the property under the 2018 trustee's deed.

C. Plaintiffs' Counter Arguments Are Unpersuasive

In seeking to overcome Citibank's arguments discussed above, plaintiffs make a series of counter arguments, including (i) that Citibank did have a right to possession of the property prior to foreclosure, (ii) the doctrine of merger of title salvages plaintiffs' claim of adverse possession, and (iii) the policy of the law of adverse possession weighs in plaintiffs' favor. We consider each of these points below, and, as noted, we find them unpersuasive.

1. *Citibank Did Not Have a Right to Possession*

As we have discussed hereinabove, one of Citibank's main arguments is that because it was—until 2018—merely a beneficiary of the deed of trust *without a right to possession*, plaintiffs' occupation of the property was not adverse to Citibank's rights as a lienholder. In an attempt to undermine Citibank's position on this point, plaintiffs argue that Citibank *did* have a right to possession. We disagree.

Plaintiffs make several arguments concerning the *right to possession*. First, plaintiffs contend that in the bankruptcy proceedings, Citibank or its predecessors were permitted under the terms of the bankruptcy plans filed by the prior owners (i.e., Robert Lifson and Toni Black, husband and wife) to move forward with foreclosure of the property and could have done so with minor effort as early as in 2010. However, even if

true, that assertion is beside the point. As correctly noted by Citibank, neither Citibank nor its predecessors were under a duty to foreclose quickly upon the borrower's default—and certainly under no such duty for the benefit of would-be adverse possessors. (See, e.g., *Nicolopulos v. Superior Court* (2003) 106 Cal.App.4th 304, 310 [lien on deed of trust expires 10 years after the final maturity date if ascertainable from the record, or 60 years after recordation of the deed if the final maturity date is not ascertainable from the record].)[8] Plaintiffs have also suggested that one of the bankruptcy plans granted a right to immediate possession—but that suggestion is plainly not correct. Under the bankruptcy plan, a creditor with a secured claim would be allowed "to exercise its rights against its collateral." Such a surrender of secured collateral in a bankruptcy plan would merely allow Citibank or its predecessor the right to proceed with foreclosure under the 2005 deed of trust, assuming of course that the plan was approved by the bankruptcy court.[9] (See *Selene Fin. LP v. Brown* (*In re Brown*) (Bankr. D.Mass. 2017) 563 B.R. 451, 456 [to surrender collateral as part of a bankruptcy plan is to make the collateral available to a secured creditor so that the creditor can exercise its rights in the collateral].) It is apparent that no right to possession of the property is indicated in the bankruptcy plan's provisions. We conclude that none of the bankruptcy records referenced by plaintiffs support their contention that Citibank, or Citibank's predecessors, had a right to the present possession of the property.

Plaintiffs also argued that Citibank had the right to possession of the property under the terms of paragraphs 6 and 7 of the 2005 deed of trust. However, there is nothing in paragraph 6 or 7 of the 2005 deed of trust that would grant or convey to Citibank, or Citibank's predecessors, a possessory right to the property. Rather, those provisions merely give to the lender (i.e., the beneficiary under the deed of trust) broad

---

[8]   The maturity date indicated on the 2005 deed of trust was "September 01, 2035."

[9]   It appears the plan was not approved.

powers to sue or to defend litigation to protect the property or its lien rights in the property, such as the power to defend against waste, condemnation or forfeiture. Paragraph 6 of the 2005 deed of trust required the borrower to occupy the property. Paragraph 7, in permitting the lender to protect the property's value and the lender's rights in the property, accorded to the lender a limited right to enter for the purpose of making repairs. We conclude paragraphs 6 and 7 of the 2005 deed of trust do not provide or grant any actual possessory interest in, or a right to possession of, the property. In short, the general rule that deeds of trust and mortgages do not convey possessory rights to the beneficiary or mortgagee is clearly applicable here, as there is no special agreement to the contrary. (E.g., *Harvey v. Nurick, supra*, 268 Cal.App.2d at p. 215 [a mortgage does not give the mortgagee the right of possession in the absence of a special agreement].)

Contrary to plaintiffs' contentions, neither the bankruptcy records nor the language of the 2005 deed of trust conferred upon Citibank a right to possession of the property prior to completion of foreclosure.

2. *The Doctrine of Merger Does Not Assist Plaintiffs*

Plaintiffs make a somewhat novel argument that the doctrine of merger establishes the validity of their adverse possession claim against Citibank, free and clear of the 2005 deed of trust. In essence, plaintiffs appear to be claiming that due to the doctrine of merger, Citibank's former interest as beneficiary of the 2005 deed of trust merged into the fee title ownership it acquired at the time of the foreclosure and no longer exists. From this seemingly innocuous premise, plaintiffs proceed to argue that Citibank's ownership would have to be treated like any other transferee or purchaser of the property against whom plaintiffs' adverse possession would have continued to run—since adverse possession runs with the land and against title, not against the particular person who happens to be the owner or holder thereof. Under this logic as pressed further by plaintiffs, since Citibank acquired title to the property in fee—with the prior deed of trust

24.

having been extinguished by merger—plaintiffs "could therefore acquire title in fee *from Citibank*" (italics added), and not from "Lifson and Black," and thus without the title being subject to the former deed of trust.

For several reasons that shall presently be set forth, we disagree with plaintiffs' argument premised on the concept of merger. First, plaintiffs have failed to recognize a unique characteristic of the state of title acquired by delivery of a trustee's deed upon foreclosure sale. As we have noted previously, the title obtained by a trustee's deed on foreclosure *relates back* to the title held by the trustor when the deed of trust was first executed and recorded. (*Dover Mobile Estates v. Fiber Form Products, Inc.*, *supra*, 220 Cal.App.3d 1494, 1498.) In its legal effect, "[t]he trustee's deed … passes the title held by the trustor at the time of execution," free of liens or encumbrances affecting the title after the deed of trust was originally recorded. (*Id.* at p. 1498; accord, *Nativi v. Deutsche Bank National Trust Co.*, *supra*, 223 Cal.App.4th 261, 272 [trustee's deed conveys "the trustor's interest as of the date that the deed was recorded"]; *R-Ranch Markets #2, Inc. v. Old Stone Bank*, *supra*, 16 Cal.App.4th 1323, 1328; *Sain v. Silvestre*, *supra*, 78 Cal.App.3d 461, 471 [purchaser at foreclosure acquired title free of equitable servitudes recorded after recording of trust deed].) Plaintiffs have failed to adequately explain, with requisite legal authority, how the doctrine of merger would supplant this basic rule of foreclosure in this case.

Second, it is not entirely clear the doctrine of merger applies, but even if it does apply, plaintiffs have not shown it would make any difference here. The doctrine of merger typically involves situations where one person has acquired *both* a greater and a lesser estate as to the same property. " 'When a greater and lesser estate coincide and meet in one and the same person, … without any intermediate estate, the latter is in law merged in the greater.' [Citation.]" (*Sheldon v. La Brea Materials Co.* (1932) 216 Cal. 686, 689.) " 'Under ordinary circumstances where the holder of a mortgage acquires the estate of the mortgagor, the mortgage interest is merged in the fee and the mortgage is

extinguished.…' [Citation.]" (*Id.* at pp. 689–690.) For example, the doctrine may apply where the beneficiary of a deed of trust is given by the property owner a deed in lieu of foreclosure. (*Decon Group, Inc. v. Prudential Mortgage Capital Co., LLC* (2014) 227 Cal.App.4th 665, 673 (*Decon*) [acknowledging the potential of merger, but finding an exception applied due to existence of junior lien].) It has been held to apply where an individual first gave several promissory notes secured by a deed of trust on real property and later conveyed the real property to one of the two recipients of the secured promissory notes. (*Wilson*, *supra*, 20 Cal.App.2d 608, 609 [holding the "interest of Mrs. Nelson as beneficiary under the trust deed was merged in the fee title which she received from her husband"].) In *Wilson*, the merger of Mrs. Nelson's equitable interest as a beneficiary under the trust deed with the fee simple title in the real property extinguished the debt owed to her under the promissory notes because "her beneficial interest in the property, founded upon that debt, became merged in the title which she acquired from the trustor." (*Id.* at p. 611.)

Here, in contrast to *Wilson*, it does not appear the same person acquired or came into the possession of two estates together in the same property, one greater and one lesser, such that the lesser estate would be deemed merged into the greater. (See *Sheldon v. La Brea Materials Co.*, *supra*, 216 Cal. at p. 689.) Rather, this was a straightforward foreclosure and trustee's sale. When a trustee's sale of property under a deed of trust occurs, it ordinarily extinguishes the deed of trust. (Civ. Code, § 2910; *Streiff v. Darlington* (1937) 9 Cal.2d 42, 45 [upon the trustee's sale, the deed of trust "ceased to exist"]; *San Mateo County Bank v. Dupret* (1932) 124 Cal.App. 395, 397.) Thus, here, it does not appear that for any appreciable time there were actually two estates residing together in one person, and certainly nothing on parity with the situation in *Wilson* where the two estates were concurrently held side-by-side. But even if it may be said, in a more general or conceptual sense, that the deed of trust was extinguished by a merger of the lien and fee ownership of the land in one person (see, e.g., *Ralph C. Sutro Co. v.*

26.

*Paramount Plastering, Inc*. (1963) 216 Cal.App.2d 433, 438), plaintiffs' argument still suffers from the same fundamental problem we raised above:  Namely, the title obtained by a trustee's deed on foreclosure *relates back* to the title held by the trustor when the deed of trust was first executed and recorded.  (*Dover Mobile Estates v. Fiber Form Products, Inc.*, *supra*, 220 Cal.App.3d 1494, 1498.)

It is not a question of whether the 2005 deed of trust was extinguished upon foreclosure and the delivery of the trustee's deed in 2018—both parties admit the beneficial interest under the deed of trust was extinguished or no longer exists.  The real question is the time reference point for the fee title obtained under said trustee's deed, and the cases we have cited provide a clear answer to that question.  (*Dover Mobile Estates v. Fiber Form Products, Inc.*, *supra*, 220 Cal.App.3d 1494, 1498 [a trustee's deed "relates back" to title that existed when deed of trust originally executed]; see also *Nativi v. Deutsche Bank National Trust Co.*, *supra*, 223 Cal.App.4th 261, 272 [a trustee's deed conveys "the trustor's interest as of the date that the deed was recorded"]; *R-Ranch Markets #2, Inc. v. Old Stone Bank*, *supra*, 16 Cal.App.4th 1323, 1328; *Sain v. Silvestre*, *supra*, 78 Cal.App.3d 461, 471.)

As succinctly summarized in *Decon*, *supra*, 227 Cal.App.4th 665:  " 'Title conveyed by a trustee's deed [(i.e., in a foreclosure sale)] relates back in time to the date on which the deed of trust was executed.  The trustee's deed therefore passes the title held by the trustor as of that earlier time … , rather than the title that the trustor held on the date of the foreclosure sale.  [Citation.]' " (*Id.* at pp. 670–671.)  Consequently, any liens or other encumbrances created or otherwise attaching to the property after execution of the deed of trust are eliminated by the foreclosure.  (*Ibid.*)  However, as *Decon* further explained, in the case of other types of conveyances subsequently made by a trustor— such as through a deed in lieu of foreclosure (as opposed to a trustee's deed)—title passes to the transferee subject to all existing liens or encumbrances at the time of the conveyance, and, depending on the circumstances, principles of merger may come into

play. (*Decon*, *supra*, at pp. 670–671.) Here, the situation is that of a trustee's deed delivered in connection with the foreclosure of the 2005 deed of trust. Consequently, the title obtained by Citibank related back to that which existed in 2005, a title that predated and was consequently free of plaintiffs' subsequent conduct seeking to gain adverse possession of the property. In light of the above principles relating to trustee's deeds and our application thereof to this case, we conclude that plaintiffs' effort to utilize the merger doctrine to somehow create a contrary rule as to the status of Citibank's title under the 2018 trustee's deed is ultimately misplaced and unconvincing.[10]

Finally, we briefly address the second prong of plaintiffs' merger argument, which is the proposition that adverse possession runs with the land and against the title, and not against any particular owner of the title. In plaintiffs' view, this leads to the conclusion that Citibank is just like any other transferor or purchaser of property against whom the adverse possession statutory period would continue to run. Citibank responds by noting the cases relied on by plaintiffs actually stand for a somewhat narrower or more nuanced rule that an adverse possessor's continuous possession is not interrupted by the title owner's subsequent conveyance of an interest in the property to a third party *after the adverse possession has commenced*. We conclude that Citibank has accurately stated the applicable law.

Plaintiffs primarily rely on *Sevier v. Locher*, *supra*, 222 Cal.App.3d 1082. However, the first sentence of that case plainly announces the nature of the appellate court's ruling: "In this case we hold that a transfer of title to real property after the prescriptive period for adverse possession of the property has begun does not interrupt or

---

[10]    Consistent with the outcome we have reached herein is the fact that the doctrine of merger is generally not applied where its invocation would inequitably impede or fail to protect the rights of the mortgagee or grantee. (See, e.g., *Decon*, *supra*, 227 Cal.App.4th at pp. 671–672; *Davis v. Randall* (1897) 117 Cal. 12, 16; *Hines v. Ward* (1898) 121 Cal. 115, 118–119.)

terminate the running of the prescriptive period." (*Id*. at p. 1084.) In *Sevier*, the adverse possession or prescriptive use by the Lochers concerning a driveway easement began in 1982 and continued unabated thereafter. In 1986, the owners conveyed the property and the appurtenant driveway easement to the Seviers. (*Id*. at pp. 1084, 1087.) The Seviers sued to quiet title in 1988, after the five-year prescriptive period had expired. The Seviers contended that the Lochers did not occupy the easement adversely to *them* (i.e., to the Seviers) for a full five years, since the Seviers did not own the property until 1986. (*Id.* at pp. 1084–1085.) The Court of Appeal in *Sevier* affirmed the trial court's determination to quiet title in favor of the adverse possessors of the easement, stating as the reason for so holding that "a transfer of title to real property after the prescriptive period for adverse possession of the property has begun does not interrupt or terminate the running of the prescriptive period." (*Id.* at p. 1084.) It was in the context of the particular facts before it that the Court of Appeal in *Sevier* also stated, "[a]dverse possession refers to occupation or use of land adverse to legal title, not to a particular holder of legal title." (*Ibid*.) In other words, once adverse possession has begun, the owner of the property cannot interrupt the five-year period merely by conveying the property to another. In so holding, *Sevier* followed *Le Roy v. Rogers*, *supra*, 30 Cal. 229, which was a case where "the prescriptive period had already run before the mortgage was executed …." (*Sevier*, *supra*, 222 Cal.App.3d at p. 1085.) *Le Roy* similarly expressed that the running of the statute could not be avoided by simply conveying the land "during the running or after the expiration of the five years." (*Le Roy*, *supra*, 30 Cal. at p. 235.) Because the relevant statements in *Sevier* and *Le Roy* were concerning conduct by a property owner to convey the property to a third party *after* the adverse possession has already begun, we agree with Citibank that they are distinguishable. Here, in contrast, the original property owners (i.e. Lifson and Black) executed and recorded the subject deed of trust in 2005, long before the adverse possession had begun, thereby establishing

29.

Citibank's interest in the property *as of 2005* by virtue of the relation-back attribute of a trustee's deed on foreclosure.

A sound basis for reconciling the case law in this area was provided in *Comstock*, *supra*, 13 Cal.App.2d at p. 158, and bears repeating here: "There are cases holding that a person in possession may gain title by adverse possession, against a mortgagee, where the adverse possession antedated the mortgage. Those cases are not controlling here, as in the instant case the asserted adverse possession started, if at all, subsequent to the date and recordation of the mortgage." As in *Comstock*, plaintiffs' adverse possession here started after the deed of trust was signed and recorded. Therefore, *Comstock*, not *Sevier*, states the precise rule governing this case.

3. *Policy Arguments Unavailing*

Plaintiffs make a series of assertions to the effect that Citibank should have realized what plaintiffs were doing (i.e., trying to gain title to the property by adverse possession) and Citibank should have done something much sooner, such as seeking to eject plaintiffs. Citibank responds, correctly, that ejection "is a possessory action in which the plaintiff must show himself entitled to the present possession." (*Montgomery v. Santa Ana Railway Co.* (1894) 104 Cal. 186, 197.) We have elsewhere in this opinion addressed and rejected plaintiffs' arguments that Citibank had a right to possession prior to purchasing the property at the trustee's sale.

Plaintiffs further argue that, because Citibank purportedly lacked vigilance, we should allow plaintiffs' adverse possession claim to prevail as a means of furthering the public policy that underlies the law, which policy they contend (based on a quote from a treatise on American jurisprudence) is not to reward the diligent trespasser, but to penalize the negligent and dormant owner who allows another for many years to exercise acts of possession over his property. We find the policy argument to be misplaced. Here, Citibank was not a negligent *owner*, but only had a lien on the property without a right of possession until the time of foreclosure in 2018, as we have explained hereinabove.

30.

Thus, in effect, plaintiffs *are* asking that we reward the diligent trespasser, contrary to the purported policy they cite. Moreover, this case is a title case, resolved by application of legal precedent and established principles of property law under the title record before us. It is not the sort of case that lends itself to a weighing of the sort of generalized policy concerns raised by plaintiffs, and we decline to do so here.

## III. Summary of Disposition of Appeal and Cross-Appeal

As to plaintiffs' appeal, and as previously explained herein, we conclude the trial court erred as a matter of law in granting mandatory relief under section 473, subdivision (b). Accordingly, the order granting Citibank's motion to set aside both the default and the judgment quieting title is reversed.

As to Citibank's cross-appeal, we hold that Citibank has successfully shown the judgment quieting title must be reversed. To summarize, plaintiffs' claim of adverse possession fails as a matter of law because (i) the undisputed record shows that plaintiffs' possession was not adverse or hostile to Citibank for the required five-year period, and (ii) alternatively, even if plaintiffs could have prevailed on their adverse possession claim, the title they would have acquired would have been subject to the 2005 deed of trust of which Citibank was the foreclosing beneficiary in 2018. Based on the record and title documents before us, it is clear that Citibank—and not plaintiffs—holds the rightful title and ownership of the property under the 2018 trustee's deed. Accordingly, the judgment quieting title is hereby reversed, and further, upon remand the trial court is instructed to enter a new judgment in favor of Citibank.

## DISPOSITION

On plaintiffs' appeal, the trial court's order under section 473 to set aside the default and judgment is reversed. On Citibank's cross-appeal, the judgment quieting title

31.

is reversed, and the matter is remanded to the trial court to enter a new judgment in favor of Citibank. Each party is to bear their own costs on appeal.

LEVY, Acting P.J.

WE CONCUR:


POOCHIGIAN, J.


SNAUFFER, J.