[No. B183966. Second Dist., Div. Eight. Apr. 24, 2007.]

STEVEN M. GARBER & ASSOCIATES, Plaintiff and Respondent, v. RAFFIE ESKANDARIAN et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certifed for publication with the exception of part 4 of the Discussion.

COUNSEL

Law Offices of Bruce Ian Favish and Bruce I. Favish for Defendants and Appellants.

Steven M. Garber & Associates, Tod A. DiTommaso and Geoffrey Crisp for Plaintiff and Respondent.

OPINION

**FLIER, J.**—Respondent Steven M. Garber & Associates (Garber) brought an action against appellants Alec Eskandarian (A. Eskandarian), Raffie Eskandarian (R. Eskandarian), New Day Communications, Inc. (New Day), Webnet One Enterprises, Inc. (Webnet), and Global Male Pass.Com (Global) for unpaid attorney fees in the amount of $132,038.32. The trial court granted Garber's motions for terminating sanctions based on appellants' failure to respond to discovery propounded by Garber. Appellants appeal from the resulting default judgment. We affirm.

## PROCEDURAL HISTORY

Garber filed its action against appellants on January 22, 2004. The complaint alleged causes of action for breach of contract and two common counts. Eventually,[1] on August 4, 2004, appellants filed a first amended answer that raised for the first time the claim that the controversy was subject

---

[1] We omit as immaterial to the issues in this appeal a detailed account of Garber's successful demurrers to appellants' original answer raising some 30 affirmative defenses, the court's specific orders on those demurrers, and appellants' tardiness in filing their first amended answer.

to binding arbitration. The court struck this defense as an inappropriate amendment because it was not contained in the original answer. In October 2004, the trial court denied appellants' motion to compel arbitration on the grounds that appellants had taken steps inconsistent with an intent to invoke arbitration and had unreasonably delayed seeking arbitration.

Garber commenced discovery by serving form interrogatories (Set One interrogatories) on appellant R. Eskandarian on May 20, 2004. This was followed by Set One interrogatories served on June 9, 2004, on appellants Global, Webnet, New Day and A. Eskandarian.

On June 9, 2004, Garber served R. Eskandarian with a request for production of documents (Set One production demand). On June 14, 2004, Garber served A. Eskandarian with the Set One production demand.

On July 23, 2004, Garber served R. Eskandarian with a second request for production of documents (Set Two production demand).

Finally, two notices of taking deposition were served on R. Eskandarian but he never appeared, and his deposition was not taken.

Thus, the outstanding discovery was: (1) Set One interrogatories addressed to all appellants; (2) Set One production demand served on R. and A. Eskandarian; (3) Set Two production demand served on R. Eskandarian; and (4) R. Eskandarian's deposition.

None of the appellants served timely answers to any of the discovery listed in categories (1) through and including (3). Garber notified each of the appellants that, pursuant to Code of Civil Procedure former section 2030, subdivision (k),[2] any objections to the interrogatories were waived because timely responses had not been served.

R. Eskandarian served a response to the Set One interrogatories on June 26 or 28, 2004. These responses contained multiple objections. Garber demanded answers without objections, but no further answers were forthcoming.

---

[2] This provision now appears as Code of Civil Procedure section 2030.290.

The Set One interrogatories against remaining appellants (Global, Webnet, New Day and A. Eskandarian) were handled identically. That is, late responses were filed containing objections, Garber demanded answers without objections, and no additional responses were forthcoming.

Both R. Eskandarian and A. Eskandarian filed late responses to the Set One and Set Two production demands; the responses consisted of nothing but objections. There was no response by either of them to Garber's ensuing demands for production of the documents without objections.

Beginning on August 12, 2004, Garber filed a series of motions to compel further responses. The motions were largely identical, and directed separately against each of the appellants.[3]

On October 8, 2004, R. Eskandarian filed further responses to the Set One interrogatories. This response contained objections, and was not verified.[4]

On October 18, 2004, the trial court granted Garber's motion to compel further responses regarding Set One interrogatories addressed to R. Eskandarian, and assessed sanctions of $1,411.30 against R. Eskandarian and his counsel, Attorney Karen Clark.[5]

Garber's motions to compel further responses as to the remaining appellants was heard on October 28, 2004. The court noted that the opposition was based on the claim that attorney Clark had lost contact with her clients and therefore could not provide further answers; the opposition also contended that when appellants objected to the interrogatories, they intended to file a motion to compel arbitration, which would have dispensed with the need for discovery. The court found these contentions to be unconvincing. The court noted that Garber's discovery was served in June 2004, "two months before [appellants'] counsel states she lost contact with Defendant

---

[3] August 12, 2004 (Set One interrogatories [R. Eskandarian]); September 2, 2004 (Set One production demand [R. Eskandarian]); September 2, 2004 (Set One interrogatories [Global]); September 2, 2004 (Set One interrogatories [Webnet]); September 2, 2004 (Set One interrogatories [New Day]); September 2, 2004 (Set One interrogatories [A. Eskandarian]); September 2, 2004 (Set One production demand [A. Eskandarian]); October 27, 2004 (Set Two production demand [R. Eskandarian]).

[4] Unverified responses "are tantamount to no responses at all." (*Appleton v. Superior Court* (1988) 206 Cal.App.3d 632, 636 [253 Cal.Rptr. 762].)

[5] The order entered on October 18, 2004, finalized an order to the same effect handed down on September 28, 2004. The latter order had been stayed, pending the court's decision on appellants' motion to compel arbitration.

Raffie Eskandarian and three months before she says she lost contact with Defendant Alec Eskandarian. . . . [Appellants] did not file their Motion to Compel Arbitration until August 9, 2004, also well after their discovery responses were due." The court granted Garber's motions to compel and ordered each of the appellants to pay sanctions of $728.80.

None of these appellants filed further responses, and they did not pay the sanctions.

On December 10, 2004, Garber filed a motion for terminating sanctions against all the appellants other than R. Eskandarian; a separate motion for terminating sanctions against R. Eskandarian had been filed on November 24, 2004.

Attorney Clark moved to be relieved as counsel for appellants on the ground that she had lost contact with appellants. The court granted this motion on December 16, 2004. Clark served a notice of this ruling on appellants' last known addresses.

Garber's motions for terminating sanctions against all the appellants came on for a hearing on January 26, 2005. Attorney Bruce Favish, appellants' current counsel, stated that he was appearing for A. Eskandarian; Vahe Jordan represented that he was appearing for the remaining appellants. (At a subsequent hearing held on February 22, 2005, Attorney Favish stated that he was appearing for all of the appellants.)

Attorney Favish stated during this hearing that he became aware of the motions for terminating sanctions about two weeks before, when he spoke with Attorney Clark. Favish stated that he was "formally" retained only on the previous day, i.e., January 25, 2005. In substance, Favish stated that errors had been committed by Attorney Clark, and that he would do his best to rectify those errors. After noting that there was no request before the court to continue the hearing, *that no opposition had been filed to the motions for terminating sanctions*, that the representations that had been made were "quite confusing," that there had been no compliance with the court's prior orders granting the motions to compel further responses, and that the notice that had been given was sufficient, the trial court stated: "I think that what I have to do on the basis of what's before me is to grant the motion and leave it to new counsel to file a motion pursuant to [Code of Civil Procedure section]

473. . . . [¶] . . . [¶] So there is a mechanism for the defendants to resurrect the case, and if they make an appropriate motion, I will grant it. I will await what the evidence presented in those motions may state, and in the meantime based on the record before the court at this time, each of these motions are granted."

Appellants did not file a motion under Code of Civil Procedure section 473. Instead, they filed a motion for reconsideration that appears to have been based on the following grounds: (1) Garber took inconsistent positions by objecting to Attorney Favish's appearance during the hearing of January 26, 2005, and by thereafter contending that appellants were represented by Favish; (2) Favish relied to his clients' detriment on having submitted on the tentative ruling issued prior to the January 26, 2005 hearing; and (3) Garber was not a registered law corporation and therefore could not maintain an action for attorney fees; (4) appellants have defenses on the merits to Garber's action. The court denied the motion.

Defaults as to all appellants were entered on February 2, 2005.[6]

Judgment was entered on April 21, 2005. The judgment awarded $132,038.32 in attorney fees sought by Garber's action, $33,963.63 in prejudgment interest, $50,000 in attorney fees and $6,426.69 in costs, for a total of $222,428.64. This appeal is from the judgment.

## DISCUSSION

1. *The Fact That Garber Was Not Registered As a Professional Law Corporation When It Filed the Action Is Immaterial*

Garber registered as a professional law corporation with the State Bar of California effective March 16, 2005. It has been held that the failure to register as a professional law corporation has no effect on the fees charged by a law firm or partnership. (*Olson v. Cohen* (2003) 106 Cal.App.4th 1209, 1215–1216 [131 Cal.Rptr.2d 620].) There is no claim here that attorneys working for Garber were not admitted to the practice of law in California.

---

[6] Defaults had been entered on July 30, 2004, apparently because appellants' answer had not been filed by that date. The amended answer was filed on August 4, 2004; the entry of a default on July 30, 2004, was apparently ignored.

Appellants' contention that Garber could not maintain the action because Garber was not registered as a professional law corporation is without merit. As the court explained in *Olson v. Cohen, supra,* 106 Cal.App.4th at pages 1215–1216, incorporation as a professional corporation is not undertaken for the protection of clients,[7] nor does the fact a law firm is not registered as a professional corporation amount to the unauthorized practice of law. Contrary to appellants' claim that the holding of *Olson* is "limited to the facts of the case," *Olson* took into consideration broad questions of policy (see fn. 7, *ante*) and concluded that the failure to register as a professional corporation should not have, and does not have, an impact on attorney fees. Given the purposes of registration as a professional corporation, we think that this conclusion is eminently sound.

## 2. *Terminating Sanctions Were Appropriate*

Appellants raise a number of contentions, which we discuss in part 3, *post,* that do not relate directly to the question whether appellants' failure to respond to discovery requests justified terminating sanctions.

■ The record amply supports the trial court's order assessing terminating sanctions. The trial court ordered appellants to respond to the Set One interrogatories and the Set One and Two production demands on October 18 and 28, 2004, and assessed monetary sanctions. Appellants failed to comply with these orders, and did not pay the sanctions. Given appellants' failure to even attempt to file further answers in compliance with the court's orders of October 18 and 28, 2004, the trial court's order awarding terminating sanctions, handed down on January 26, 2005, was fully justified.

We note that the trial court expressly left the door open on January 26, 2005, to a motion under Code of Civil Procedure section 473. Given the

---

[7] "The complaint alleges that Corp failed to comply with one of the requirements for operating as a law corporation. The decision to incorporate as a professional corporation, however, is typically made to obtain tax advantages and to avoid personal liability for the corporation's debts. (See 2 Organizing Corporations in Cal. (Cont.Ed.Bar 3d ed. 2001) Professional Corporations, § 6.5, pp. 638–639.) Incorporation is not undertaken for the protection of clients. The protections for clients mandated by laws governing incorporation of law corporations, such as restrictions on who may be a shareholder and requirements for security for claims against the corporation, protect against abuses which might otherwise occur from the use of the corporate structure. Failure to comply with these requirements may result in an order to cease and desist or suspension or revocation of registration. (Bus. & Prof. Code, §§ 6168, 6169.) To require disgorgement of fees because of a failure to register the corporation, on the other hand, is disproportionate to the wrong." (*Olson v. Cohen, supra,* 106 Cal.App.4th 1209, 1214–1215.)

record of noncompliance that appellants had made, the trial court was under no obligation to offer to rescue them from the consequences, but the court nevertheless did so. The fact that appellants did not avail themselves of that opportunity but instead filed a motion for reconsideration that bordered on the frivolous is a further indication that terminating sanctions were justified and appropriate.

We also find without merit appellants' contention that there is no evidence that appellants had notice of the court's discovery orders. Appellants acknowledge that R. Eskandarian has been a fugitive from justice, and subject to a federal bench warrant, since he failed to appear on August 31, 2004, at a status conference in a criminal case pending in federal court. Appellants rely on the declarations of Attorney Favish and A. Eskandarian, filed in support of their motion for reconsideration, that set forth that A. Eskandarian is authorized to defend and prosecute the within action on behalf of all of the appellants. In his declaration dated February 17, 2005, A. Eskandarian states that he was unaware of the trial court's order of October 28, 2004, that granted Garber's motions to compel further responses and that he did not reside at, or receive mail at, the address used by Attorney Clark for the appellants, A. Eskandarian included.

We note that appellants do not claim that *Garber's service* of any papers on Attorney Clark was invalid or for any reason ineffective. (Under Code Civ. Proc., § 1015, service of papers was required to be made on Clark, and not her clients.) We also have a declaration by Attorney Clark, dated November 22, 2004, and submitted in opposition to the motion for terminating sanctions, that states in relevant part that "[m]y clients in this case have disappeared. [¶] Since August (as to Raffie Eskandarian) and since September (as to Alec Eskandarian), my clients have not returned my telephone calls. I have made over 20 such telephone calls. Nor have they responded to my letters and emails attempting to establish communication. The defendants' whereabouts are unknown to me."[8]

Appellants, specifically A. Eskandarian, cannot disappear in the midst of a pending case and avoid the consequences of such a tactic. When the court

---

[8] Since it is not critical to our decision, we note only in the margin that A. Eskandarian's declaration of February 17, 2005, is less than credible. He states that he called Attorney Clark from Panama in September 2004, but he offers no comment whatever on Clark's declaration that she attempted to contact him repeatedly by phone, mail and email but that, as far as she could tell, he had "disappeared." One would think that the least A. Eskandarian could do is to state that Clark was wrong in stating that she had tried to contact him. This he (carefully) failed to do.

heard the motion for terminating sanctions on January 26, 2005, the dispositive facts of record were that appellants, represented throughout by counsel, had failed to respond to discovery requests, and had also failed to comply with the court's orders of October 28, 2004. The trial court could not be expected to wait until, and if, appellants chose to communicate with their own counsel.

Indeed, on January 26, 2005, appellants appeared through new counsel, who did nothing to oppose the motions for terminating sanctions, and who spoke with the assurance of lawyers who are well aware of their clients' wishes and expectations. As noted, the trial court gave every indication that, if appellants filed a motion under Code of Civil Procedure section 473, the court would give it a sympathetic hearing. Given that appellants themselves had brought on the situation that the court had to resolve on January 26, 2005, the trial court could do nothing other than what it did do, which was to grant the motion for terminating sanctions and to offer appellants a chance to set that order aside.

It is noteworthy that the only argument that appellants advance in support of the proposition that the trial court abused its discretion in awarding terminating sanctions is evasive and does not address the actual basis for the court's order assessing terminating sanctions.[9] Whether or not the fee agreement "spawned the problems" (see fn. 9, *ante*), the fact is that terminating sanctions were awarded because appellants failed to respond to discovery requests, and ignored the trial court's orders compelling further answers. On this issue, appellants apparently have nothing to say.

### 3. *Appellants' Remaining Contentions Are Without Merit*

Appellants claim that their litigation strategies were the result of the invalid arbitration provision in their fee agreement with Garber and that therefore they should not be penalized for these litigation strategies. The "litigation strategy" for which appellants were penalized was that they failed

---

[9] "In this case, while it is understandable that the trial court might have been frustrated with Defendants' counsel's position regarding arbitration, it is Plaintiff's illegal and confusing fee agreement which spawned the problems. Further, once Alec Eskandarian retained new counsel on behalf of himself and in his capacity as attorney-in-fact for his brother, the trial court could have and should have afforded Defendants an opportunity to contest Plaintiff's claim on its merits, especially considering the meritorious defenses to Plaintiff's action."

to respond to discovery, and failed to comply with the trial court's orders. The arbitration provision, valid or not, had nothing to do with the terminating sanctions.

■ Appellants advance a number of contentions that go to the merits of the action filed by Garber. In light of the default judgment that was entered in this case, these contentions are both substantively and procedurally barred. Substantively, "[t]he *judgment by default* is said to 'confess' the material facts alleged by the plaintiff, i.e., the defendant's failure to answer has the same effect as an express admission of the matters well pleaded in the complaint. The judgment is, in consequence, *res judicata* on the issue of the right to the relief awarded." (6 Witkin, Cal. Procedure (4th ed. 1997) Proceedings Without Trial, § 153, p. 570.)[10] Thus, the allegations of the complaint that Garber rendered legal services in accordance, and in compliance with, the fee agreement, which allegations are deemed admitted, bar the contentions that the arbitration provision in the fee agreement was void and unenforceable, that Garber's billings were fraudulent and excessive, that Garber breached the fee agreement by not providing biweekly estimates or monthly statements, and that filing the within action breached the fee agreement.

■ Procedurally, the entry of the default barred appellants from advancing contentions on the merits. The purported defenses on the merits were advanced for the first time in appellants' motion for reconsideration of the order imposing terminating sanctions. This document was filed on February 17, 2005; the default was entered as to the appellants on January 27, 2005. The entry of a default cuts off the right to file pleadings and motions, and the right to notices and the service of pleadings.[11] On April 21, 2005, the court held a hearing on the motion for reconsideration, as well as on the entry of the judgment. As the trial court pointed out on April 21, 2005, appellants'

---

[10] A classic statement of the rule is found in *Brown v. Brown* (1915) 170 Cal. 1, 5 [147 P. 1168]: "The judgment which follows upon this sort of admission is, in contemplation of law, a complete adjudication of all the rights of the parties embraced in the prayer for relief and arising from the facts stated in the complaint, including the facts in his favor as well as those against him. The defendant here is presumed to have acceded to the proposition embraced in the complaint and to have consented that plaintiff should obtain the relief therein prayed for, upon the conditions and facts set forth in the complaint."

[11] " 'The clerk's entry of default cuts off the defendant's right to take further affirmative steps such as filing a pleading or motion, and the defendant is not entitled to notices or service of pleadings or papers.' (6 Witkin, Cal. Procedure[, *supra*,] Proceedings Without Trial, § 152, p. 569, italics omitted; see also Code Civ. Proc., § 1010 [no 'notice or paper, other than amendments to the pleadings, or amended pleading, need be served'].)" (*Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1301 [24 Cal.Rptr.3d 780].)

remedy (which had been suggested to them by the trial court during the hearing of January 26, 2005) was a motion under Code of Civil Procedure section 473 to set aside the default; until the default was set aside, appellants' procedural rights were cut off. As noted, appellants failed to file a section 473 motion. Thus, on April 21, 2005, the court turned to materials submitted by Garber to determine the amount of the judgment. These materials included 119 pages of billings generated by the Garber firm. The court concluded that these documents supported the judgment that Garber sought, and which the court then entered. ■ In an appeal from a default judgment, review of the default judgment is limited to questions of jurisdiction, sufficiency of the pleadings and excessive damages, if the damages awarded exceed the sum sought in the complaint. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2006) ¶¶ 8:131, 8:145, pp. 8-81, 8-82 & 8-95; *Corona v. Lundigan* (1984) 158 Cal.App.3d 764, 766–767 [204 Cal.Rptr. 846].) The damages awarded in this case do not exceed the sum sought in the complaint, and are based on the billing documents submitted by Garber.

In sum, appellants' efforts to argue the merits of their case are barred substantively by the default judgment, which operates as an admission of the allegations of the complaint, and are also barred procedurally by the entry of a default. Appellants failed to avail themselves of the only remedy that could have been of any assistance to them, which was a successful motion under Code of Civil Procedure section 473 to set aside the default.

Appellants request that we take judicial notice of materials that allegedly support these contentions. Since both the contentions and the materials are irrelevant to our disposition of this appeal, the request for judicial notice is denied.

■ Appellants' contention that a statement of damages should have been filed before the default was taken is without merit. A statement of damages is required only in cases involving personal injuries or wrongful death. (Code Civ. Proc., § 425.11.)

4. *The Motion To Dismiss R. Eskandarian's Appeal Is Denied** .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 813.

## DISPOSITION

The judgment is affirmed. Respondent is to recover its costs on appeal.

Rubin, Acting P. J., and Boland, J., concurred.

On May 10, 2007, and May 22, 2007, the opinion was modified to read as printed above.