Filed 1/15/26  Wright v. Green CA1/4

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| MICHAEL C. WRIGHT,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>COLTON L. GREEN,<br><br>      Defendant and Appellant. | A173073<br><br>(Alameda County<br>Super. Ct. No. 22CV007971) |

Colton L. Green appeals from the trial court's order striking his answer and an interlocutory judgment ordering the partition by sale of a property he owns together with plaintiff Michael C. Wright.  Green contends the trial court failed to serve him with one order to show cause that preceded the striking of his answer and the order striking his answer.  He further argues the trial court failed to comply with certain procedural requirements before partitioning the property under the Uniform Partition of Heirs Property Act (UPHPA; Code Civ. Proc., former § 874.311 et seq.).[1]  We find no error and will affirm.

---

[1] Undesignated statutory citations are to the Code of Civil Procedure. While this case was pending, the Legislature amended the UPHPA to rename it the Partition of Real Property Act and broaden its applicability.  (Stats. 2022, ch. 82.)  The amended statute applies to partition actions filed on or after January 1, 2023.  (§ 874.311.)  Because this case arose under the prior

1

## BACKGROUND

Our understanding of the background of this case is limited. The record Green has provided, even after the addition of the documents Green and Wright each submitted in motions to augment the record, contains only a subset of the documents filed during the three years of litigation of this case, and does not contain any reporter's transcripts or other substitute records of the oral proceedings at any of the hearings.[2] As best we can glean, Wright and Green own a duplex together in Oakland as tenants in common, with Wright owning 10 percent and Green owning 90 percent. Wright filed a complaint for partition of the property by sale in March 2022. In November 2023, the trial court granted Wright's motion for interlocutory judgment and ordered that the property be partitioned by sale. Green appealed.

This court issued a writ of supersedeas and noted the parties' apparent agreement that the UPHPA governed the partition of the property. (*Wright v. Green* (March 28, 2024, A169396.) The parties then stipulated and the trial court ordered that the case would be determined by the statutes providing for partition as modified by the UPHPA. The parties' stipulation further provided that they would file a motion for a judicial determination of the appraised, fair market value of the property. Green thereafter requested the dismissal of his appeal, and this court granted his request in April 2024. (*Wright v. Green* (April 23, 2024, A169396).)

Wright moved in the trial court to appoint an appraiser. The court held a status conference in June 2024, but according to the trial court's minute

law, we refer to the UPHPA in the past tense and, for any statute that has changed, cite the UPHPA version. We recognize, however, that the substantive requirements of the UPHPA and the Partition of Real Property Act are identical.

[2] Green's motion to augment the record, filed July 7, 2025, is granted.

order, neither Green nor his counsel appeared. The trial court continued the status conference to July 2024. Wright's counsel filed a notice of entry of this order and served it on Green's counsel.

In early July 2024, Green filed his opposition to Wright's motion to appoint an appraiser. Green asked the court to delay appointing an appraiser, in part because the appointment would create a strict timeframe under the UPHPA for cotenants who did not request partition to acquire the interests of cotenants who did request partition.

Later in July 2024, the trial court held the hearing on Wright's motion to appoint an appraiser and rescheduled status conference. According to the trial court's minute order, neither Green nor his counsel appeared. The trial court granted Wright's motion to appoint an appraiser, and Wright's counsel filed a notice of entry of this order and served it on Green's counsel. Separately, the trial court set an order to show cause hearing regarding sanctions for Green's counsel's failure to appear at the rescheduled status conference.

In August 2024, the trial court held a hearing on the order to show cause. According to the trial court's minute order, neither Green nor his counsel appeared. The trial court ordered Green to appear at a status conference in October 2024 to show cause why his answer should not be stricken for his repeated failures to appear. The trial court also amended its prior order to appoint a different appraiser, apparently because the first appraiser was retired. Wright's counsel filed a notice of entry of both orders and served it on Green's counsel.

The second appraiser subsequently withdrew from the case, apparently in response to Green's counsel's accusations that he was biased because he and Wright's counsel referred to each other by their first names by email.

3

Green's counsel thereafter did not respond to Wright's counsel's repeated offers to stipulate to any available appraiser.

In October 2024, the trial court held the scheduled status conference and order to show cause hearing, as well as a hearing on Wright's motion to appoint a referee. According to the trial court's minute order, neither Green nor his counsel appeared. The trial court appointed a referee to decide offsets and accounting/contribution issues. It also struck Green's answer due to his non-appearance and stated that Wright would move forward with requesting entry of Green's default. Wright's counsel filed a notice of entry of the order and served it on Green's counsel. At Wright's request, the trial court clerk thereafter entered Green's default. Wright's counsel emailed Green's counsel a copy of the entry of default.

A few days later, in November 2024 Wright filed an ex parte application for a determination of value and amended interlocutory judgment of sale. Wright's counsel served Green's counsel with his application. Wright contended, among other things, that the value of an appraisal was outweighed by its cost, resulting from Green's obstruction of the appraisal. He provided a printout of the Zillow estimate of the property's value, which ranged from $682,000 to $970,000. Wright also asserted that Green was already unable to pay the existing mortgage without Wright's financial help and could not take on the additional debt necessary to buy out Wright's interest, even based on the lower $682,000 valuation.

Around this same time, Green reserved a hearing date in February 2025 for a motion to set aside his default.

Green's counsel did not attend a status conference later in November 2024. She told Wright's counsel in advance that it was because of a family medical emergency. Wright's counsel told Green's counsel that she would tell

4

the court of Green's counsel's family emergency.  At the status conference, the trial court set the hearing on Wright's ex parte application for January 2025.  It also advanced to the same date the hearing on Green's motion to set aside the default.  The trial court served this order on Green and his counsel.

After the hearing, Wright's counsel emailed Green's counsel, telling her that the court had scheduled Wright's ex parte to be heard in January 2025 "as a regularly-noticed motion" and had advanced the hearing on Green's motion to set aside the default to the same date to give the parties "time to properly brief both."  Wright's counsel also said she was "very open" to meeting and conferring regarding Green's motion to set aside the default.  Wright's counsel later submitted a declaration stating that at the November 2024 status conference, she had offered to re-file her ex parte papers but the trial court told her not to.

The court continued the hearing on the motions three times.  Green filed his motion to set aside the default (which he erroneously referred to as a motion to set aside a default judgment) on March 4, 2025.  He did not mention anything in his motion about not receiving notice of the orders to show cause.  His entire argument section consisted of six lines, without any citation to legal authority.  He asserted that the trial court had struck his answer after two years of litigation without providing a legal basis.  He also urged the court to set aside the default because the UPHPA creates a clear statutory scheme that the parties stipulated to follow.

The trial court heard the motions on March 25, 2025.  The trial court denied Green's motion, in part because he filed his motion one day late.  It granted Wright's motion as unopposed.  The trial court then entered the interlocutory judgment in April 2025.

5

**DISCUSSION**

**I.    Striking Answer**

Green first challenges the trial court's order striking his answer as a sanction.  The sole error he identifies concerns notice of two specific orders. He contends the trial court violated his constitutional right to due process because it failed to serve him with notice of the August 2024 order to show cause why the court should not strike his answer and the October 2024 order striking his answer.  He further contends the trial court violated section 1019.5, subdivision (b), which requires a trial court to serve notice of an order granting or denying a motion on the court's own motion unless the parties waive notice.[3]

"California trial courts possess the inherent power to issue a terminating sanction for pervasive misconduct . . . ."  (*Stephen Slesinger, Inc. v. Walt Disney Co.* (2007) 155 Cal.App.4th 736, 765, disapproved of on other grounds by *City of Los Angeles v. PricewaterhouseCoopers, LLP* (2024) 17 Cal.5th 46, 73, fn. 5; accord, *Del Junco v. Hufnagel* (2007) 150 Cal.App.4th 789, 799.)  "Adequate notice prior to imposition of sanctions is mandated by . . . the due process clauses of the state and federal Constitutions.  (Cal. Const., art. I, § 7; U.S. Const., 14th Amend.)  Constitutional due process principles are offended by summary imposition of sanctions by a superior court.  [Citation.]  Adequacy of notice is not dependent upon an arbitrary number of days notice but should be determined on a case-by-case basis to satisfy basic due process requirements."  (*Childs v. PaineWebber Incorporated*

---

[3] Section 1019.5, subdivision (b) states, "When a motion is granted or denied on the court's own motion, notice of the court's order shall be given by the court in the manner provided in this chapter, unless notice is waived by all parties in open court and is entered in the minutes."

(1994) 29 Cal.App.4th 982, 995.)  We review a trial court's issuance of such sanctions for abuse of discretion.  (*Id*. at p. 996.)

Preliminarily, Green has not shown that section 1019.5, subdivision (b) applies here, since it is not clear from the record that the trial court issued its orders to show cause on its own motion.  Green asserts the trial court issued its orders sua sponte, while Wright asserts that the orders were at his request.  Neither party cites anything in the record to support his position, in part because there is no reporter's transcript or acceptable substitute documenting what took place at any hearing in the case.  In this posture, the tie goes to Wright, since Green as the appellant has the burden of presenting an adequate record.  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609 [because judgment is presumed correct and an appellant has the burden of showing error, an appellant's " '[f]ailure to provide an adequate record on an issue requires that the issue be resolved against [the appellant]' "].)[4]  We therefore conclude that section 1019.5, subdivision (b) did not obligate the trial court itself to serve copies of its orders on Green.

This point is fairly inconsequential, however, because even if section 1019.5, subdivision (b) did not obligate the trial court to serve notice of its orders, Wright was required to do so under section 1019.5, subdivision (a).[5]

---

[4] In response to Wright's citation to *Jameson v. Desta*, Green inexplicably asserts that the case cannot be cited because it is unpublished and rule 8.1115(a)–(b) of the California Rules of Court prohibits citation of unpublished opinions in such circumstances.  The decision is published, as are all decisions by the California Supreme Court.  (Cal. Rules of Court, rule 8.1105(a) ["All opinions of the Supreme Court are published in the Official Reports"].)

[5] Section 1019.5, subdivision (a) states, "When a motion is granted or denied, unless the court otherwise orders, notice of the court's decision or order shall be given by the prevailing party to all other parties or their

Likewise, Green's due process rights entitled him to adequate notice prior to the imposition of sanctions. (*Childs v. PaineWebber Incorporated*, *supra*, 29 Cal.App.4th at p. 995.)

The record does not support Green's argument that he did not receive sufficient notice because it shows that Wright served copies of the two orders that Green complains of.[6] First, on September 6, 2024, Wright's counsel filed and served a notice of entry of the trial court's August 2024 order to show cause. The order attached to this notice of entry of order states, "Defendant is Ordered to appear at the scheduled Status Conference and show as [*sic*] to why the answer shall not be stricken." It then states that the status conference was scheduled for October 24, 2024, almost seven weeks after Wright's counsel filed and served the notice of entry of order.

Second, Wright's counsel served notice of the October 2024 order striking Green's answer. On October 29, 2024, Wright's counsel filed and served a document titled, "Notice Of Ruling Of [*sic*] Plaintiff's Motion For An Accounting And Contribution Or, In The Alternative, For The Appointment Of A Referee To Determine Same." The minute order attached to this notice states, "Due to Counsel of Defendants non appearance the Court strikes

---

attorneys, in the manner provided in this chapter, unless notice is waived by all parties in open court and is entered in the minutes."

[6] We note that the record does not appear to show that the trial court or Wright served Green with notice of entry of the order at the July 2024 status conference setting the order to show cause hearing for August 2024. However, Green does not complain of lack of notice of this hearing, so we do not consider that issue. (*Dilbert v. Newsom* (2024) 101 Cal.App.5th 317, 323 [" 'it is not the appellate court's role to construct theories or arguments that would undermine the judgment and defeat the presumption of correctness' " of the trial court judgment].)

defendant Colton Green's Answer and Plaintiff will move [sic] with filing a Default package."

Green has not disputed that his counsel received these notices. Nor does Green offer any reason to think that the notices Wright filed and served were insufficient in any way. This silence is significant, especially given that Green failed to designate these documents for inclusion in the clerk's transcript when he designated his record for this appeal or when he moved to augment the record, forcing Wright to move to augment the record to include them. (See *Steven M. Garber & Associates v. Eskandarian* (2007) 150 Cal.App.4th 813, 822 ["It is noteworthy that the only argument that appellants advance in support of the proposition that the trial court abused its discretion in awarding terminating sanctions is evasive and does not address the actual basis for the court's order assessing terminating sanctions"]; *LA Investments, LLC v. Spix* (2022) 75 Cal.App.5th 1044, 1061–1062 [treating argument as waived where appellants omitted key documents from record, forcing the opposing party to supply them, and failed to cite to the record].) The obvious inference is that Green's counsel was attempting to make it look as though she had received no notice at all, which was not the case.[7]

Because Green received actual notice to his counsel of the August and October 2024 orders he complains of, we reject Green's argument that his due process rights were violated by not receiving notice specifically from the court

---

[7] At oral argument, after we issued a tentative opinion, Green's counsel asserted for the first time that the notices were deficient because the titles of the notices did not inform her that multiple orders were attached and she therefore gave the notices only a cursory glance. This argument is unpersuasive. Green's counsel cannot complain that she lacked notice simply because she did not read the documents she received.

of those orders. The fact that Green received actual notice of the August and October 2024 orders also means that, even if section 1019.5, subdivision (b) applied here and the trial court was itself obligated to serve its orders on Green, the trial court's failure to do so was harmless.

## II. Interlocutory Judgment

Separate from his challenge to the trial court's order striking his answer, Green attacks the amended interlocutory judgment of partition by sale that the trial court entered in response to Wright's motion.

Actions to partition a property by sale generally proceed in two steps. The trial court first determines the interests of the parties in the property and the right to partition, issues an interlocutory judgment, and orders the partition of the property. (§ 872.720, subd. (a); *Summers v. Superior Court* (2018) 24 Cal.App.5th 138, 142–143; see 4 Miller & Starr, Cal. Real Estate (4th ed. 2024) § 11:15.) Such an interlocutory judgment is expressly appealable. (§ 904.1, subd. (a)(9).) The court then appoints a referee to sell the property and distributes the proceeds, subject to offsets or credits due between the cotenants. (§§ 873.010, 873.510, 873.820; *Wallace v. Daley* (1990) 220 Cal.App.3d 1028, 1035 ["Every partition action includes a final accounting according to the principles of equity for both charges and credits upon each co-tenant's interest"].)

The UPHPA added several steps to this process. (Former § 874.313, subd. (c) [UPHPA "supplement[ed]" other statutes governing partition and controlled over any inconsistent provisions].) When the UPHPA applied, the trial court had to determine the fair market value of the property by appraisal or, if it "determine[d] that the evidentiary value of an appraisal [was] outweighed by the cost of the appraisal," then after an evidentiary hearing. (Former § 874.316, subds. (a), (c).) If a party requested partition by

10

sale, the trial court then had to "send notice to the parties that any cotenant except a cotenant that requested partition by sale [could] buy all the interests of the cotenants that requested partition by sale." (§ 874.317, subd. (a).) Cotenants had 45 days to elect to buy the interest of the cotenants that requested partition. (*Id.*, subd. (b).) The trial court would reconcile any competing buyout demands and facilitate the buyout. (*Id.*, subds. (e)–(f).) If necessary, the court would then order the partition of the property by sale or in kind. (§ 874.318.)

The UPHPA presumed that the property would be partitioned in kind but allowed for partition by sale if the court found that partition in kind would "result in great prejudice to the cotenants as a group." (§ 874.318, subd. (a).) Among the factors to consider when deciding whether to order partition by sale were "[w]hether the heirs property practicably [could] be divided among the cotenants," "[e]vidence of the collective duration of ownership or possession of the property by a cotenant and one or more predecessors in title or predecessors in possession to the cotenant who are or were relatives of the cotenant or each other," and "[a] cotenant's sentimental attachment to the property, including any attachment arising because the property has ancestral or other unique or special value to the cotenant." (Former § 874.319, subd. (a)(1), (3)–(4).)

"The standard of review for an interlocutory judgment of partition is abuse of discretion. [Citations.] Under that standard, '[t]he trial court's "application of the law to the facts is reversible only if arbitrary and capricious." ' " (*Cummings v. Dessel* (2017) 13 Cal.App.5th 589, 597.)

Green argues the trial court failed to comply with several of the UPHPA procedures. First, he contends the trial court did not determine the fair market value of the property either by appraisal or by evidentiary

11

hearing. Second, he argues the trial court did not send him notice under section 874.317, subdivision (a) of his right to buy out Wright's interest. Third, he claims he was entitled to the opportunity to buy out Wright's interest notwithstanding his default. Finally, he faults the trial court for ordering partition by sale rather than partition in kind.

Green's arguments have no merit, largely because he fails to reckon with the significance of the fact that he was in default when the trial court entered the amended interlocutory judgment. Entry of a defendant's default has several effects, but the one most relevant here is that "[t]he entry of a default terminates a defendant's rights to take any further affirmative steps in the litigation until either its default is set aside or a default judgment is entered. [Citations.] 'A defendant against whom a default has been entered is out of court and is not entitled to take any further steps in the cause affecting plaintiff's right of action; he cannot thereafter, until such default is set aside in a proper proceeding, file pleadings . . . *or demand notice of subsequent proceedings.*' " (*Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc.* (1984) 155 Cal.App.3d 381, 385–386, italics added.) A defendant in default " ' "*is not entitled to notices or service of pleadings or papers.*" ' " (*Steven M. Garber & Associates v. Eskandarian*, *supra*, 150 Cal.App.4th at p. 823, fn. 11, italics added; see § 1010 ["No bill of exceptions, notice of appeal, or other notice or paper, other than amendments to the pleadings, or an amended pleading, need be served upon any party whose default has been duly entered or who has not appeared in the action or proceeding"].)

With these principles in mind, we consider each of Green's arguments in turn. First, the trial court did not err in determining the value of the property. Wright's motion to amend the interlocutory judgment (which Green did not include in the record) argued that the value of an appraisal

12

was outweighed by its cost resulting from Green's obstruction. Wright included an exhibit with a Zillow estimate of the property's value. Green did not oppose the motion, nor could he given his default. The trial court could therefore credit Wright's argument and value the property according to his documentary evidence.

Second, the trial court did not err in failing to send Green notice of his right to buy out Wright's interest. Section 874.317, subdivision (a) required the court to "send notice to the parties that any cotenant except a cotenant that requested partition by sale may buy all the interests of the cotenants that requested partition by sale." By its plain terms, the statute required notice to "parties." After his default, Green was effectively no longer a party and was no longer entitled to notice, including under section 874.317. (§ 1010.) Moreover, even if Green were somehow entitled to notice under section 874.317, subdivision (a) of his right to buy out Wright's interest, any error in failing to send him notice was harmless. Green was well aware of his right to buy out Wright, since he discussed the buyout procedure in an opposition he had filed in July 2024 in response to Wright's motion to appoint an appraiser.

Third, Green's default also precluded him from participating in the statutory buyout of Wright's interest. A defendant in default " 'is not entitled to take any further steps in the cause affecting plaintiff's right of action . . . .' " (*Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc.*, *supra*, 155 Cal.App.3d at pp. 385–386.) Green emphasizes that section 874.317, subdivision (b) stated that "any cotenant" that did not request partition by sale could give notice to the court that it elected to exercise its buy out right. But nothing in the UPHPA stated that this provision would relieve a cotenant in default from the general rule that a defaulting party is no longer

13

entitled to participate in the litigation. When the Legislature intends to except a proceeding from the rules applicable to defaults, it does so explicitly, as it has for quiet title actions. (§ 764.010 [in quiet title actions, the "court shall not enter judgment by default but shall in all cases require evidence of plaintiff's title and hear such evidence as may be offered respecting the claims of any of the defendants"].) By contrast, the UPHPA expressly envisioned that cotenants could be subject to default judgments, since it required a court conducting a partition in kind to allocate part of the property to cotenants "that are unknown, unlocatable, or the subject of a default judgment." (§ 874.318, subd. (d).)

Even if Green were entitled to the statutory opportunity to try to buy out Wright's interest despite being in default, any error in depriving him of that opportunity was harmless on this record. Green has the burden of establishing prejudice to obtain a reversal of the judgment. (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963 ["we cannot presume prejudice and will not reverse the judgment in the absence of an affirmative showing there was a miscarriage of justice. [Citations.] Nor will this court act as counsel for appellant by furnishing a legal argument as to how the trial court's ruling was prejudicial"].) "To establish prejudice, a party must show 'a reasonable probability that in the absence of the error, a result more favorable to [it] would have been reached.'" (*Diaz v. Carcamo* (2011) 51 Cal.4th 1148, 1161.) Wright documented in the trial court that Green was already unable to pay the existing mortgage without Wright's financial help and could not take on the additional debt necessary to buy out Wright's interest. Wright highlighted this evidence in his respondent's brief and argued any error was harmless, but Green still has not shown Wright was

14

incorrect or otherwise addressed whether there is a reasonable probability that he could take advantage of the buyout opportunity if given a chance.

Finally, the trial court did not err by ordering partition by sale. The judgment reflects the trial court's conclusion that partition in kind was not equitable because the property is a duplex and it is physically impossible to divide a duplex into 90 percent and 10 percent portions. Green points out that the UPHPA favored partition in kind and required the trial courts to consider evidence of the collective duration of ownership of a property by a cotenant and a cotenant's sentimental or ancestral attachment to a property. (Former § 874.319, subd. (a)(4)–(5).) This is true, but the UPHPA also required the court to consider whether "the property practicably c[ould] be divided among the cotenants." (*Id.*, subd. (a)(1).) Green fails to explain how a duplex can feasibly be divided into 90 percent and 10 percent portions.

## DISPOSITION

The judgment is affirmed.

BROWN, P. J.


WE CONCUR:

STREETER, J.
GOLDMAN, J.


*Wright v. Green* (A173073)

15